[Cite as *Koeppen v. Columbus*, 2015-Ohio-4463.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Maureen Koeppen et al., | : | |
| Plaintiffs-Appellees, | : | |
| | | No. 15AP-56 |
| v. | : | (C.P.C. No. 13CV-9826) |
| City of Columbus, Division of Fire, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 27, 2015

*Tucker Ellis LLP, Scott J. Stitt* and *Chelsea Mikula*; *Klausman Law Ltd.,* and *C. William Klausman*, for appellees.

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Michael R. Halloran*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, the City of Columbus, Division of Fire, appeals a judgment of the Franklin County Court of Common Pleas that denied the city's motion for summary judgment on the question of public subdivision immunity. For the following reasons, we reverse that judgment.

{¶ 2} On the evening August 6, 2013, plaintiff-appellee, Maureen Koeppen, stopped her BMW 128i convertible at a red light at the intersection of Fifth Avenue and Olentangy River Road.[1] The roof of Koeppen's convertible was retracted. To Koeppen's immediate left, an ambulance was stopped in the left-turn lane.

---

[1] We draw the facts set forth in this decision largely from Koeppen's deposition. For purposes of summary judgment, the city does not contest Koeppen's version of events.

{¶ 3}   As she waited for the light to change, Koeppen felt liquid hit the left side of her body.  She turned her head to the left, and a warm liquid sprayed into her face.  Later, Koeppen stated the liquid had a chemical or medicinal taste and "was not a dark color." (Koeppen depo., at 18, 28.)   The liquid appeared to "com[e] out at an angle" from "somewhere below the windshield" of the ambulance.  (Koeppen depo., at 16.)[2]

{¶ 4}   Koeppen began frantically waving her hands and yelling, "Stop. Stop. * * * It's in my face."  (Koeppen depo., at 11-12.)  The person sitting in the passenger seat of the ambulance turned towards her and waved.  Koeppen remembers thinking or saying at that point, "No. No. I'm not waving at you hi.  I'm telling you to stop."  (Koeppen depo., at 11-12.)

{¶ 5}   When the light changed to green, the ambulance turned left and drove off. Koeppen drove through the intersection and stopped on the first cross street.  Her hair, face, and neck were soaked with the liquid that had come from the ambulance.

{¶ 6}   After being hit with the liquid, Koeppen's face and chest broke out, and she "gradually started to feel worse and worse."  (Koeppen depo., at 22.)  Approximately one week after the incident, Koeppen went to the emergency room of Dublin Methodist Hospital.   Koeppen was ultimately diagnosed with aplastic anemia, a condition that happens when a person has too few blood cells.

{¶ 7}   On August 30, 2013, Koeppen and her husband, David M. Koeppen, filed suit against the city, alleging claims for negligence and loss of consortium.  Through discovery, the Koeppens discovered that an ambulance operated by the Columbus Division of Fire ("CDF") had driven through the Fifth Avenue and Olentangy River Road intersection at the time and date of the incident.  John Endicott and Anthony Klein, who are both CDF paramedics, were assigned to that ambulance on the evening of August 6, 2013.[3]

---

[2] The Koeppens maintain that, in her deposition, Maureen Koeppen testified that the fluid appeared to come from where the engine was located on the ambulance.  Koeppen, unfortunately, did not testify clearly on that point.  When asked in her deposition whether the fluid originated from "somewhere in the region of the engine," Koeppen replied that she could not "say with certainty with the visual you're giving me to answer that exactly."  (Koeppen depo., at 17.)   She then repeated, "[I]t was coming out from somewhere below the windshield."  (Koeppen depo., at 17.)

[3] In addition to being paramedics, Endicott and Klein are both CDF firefighters.  As this case only implicates Endicott's and Klein's roles as paramedics, we will refer to them throughout this decision as paramedics.

{¶ 8}   The city moved for summary judgment, asserting that it was immune from liability under R.C. Chapter 2744.  The Koeppens responded that the city lost entitlement to immunity pursuant to the R.C. 2744.02(B)(1) exception, which provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority."  In a judgment dated December 30, 2014, the trial court denied the city's motion for summary judgment.

{¶ 9}   The city appeals the December 30, 2014 judgment, and assigns the following error:

> The Trial Court erred when it denied the City's motion for summary judgment filed on the basis of immunity pursuant to Chapter 2744 of the Ohio Revised Code.

{¶ 10} A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.  *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29.  Appellate review of a trial court's ruling on a motion for summary judgment is de novo.  *Hudson* at ¶ 29.  This means that an appellate court conducts an independent review, without deference to the trial court's determination.  *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 11} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case.  *Id.*  Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence.  *Id.*  If the moving party meets its burden, then the nonmoving party has a

reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 12} Courts employ a three-tier test to determine whether a political subdivision is immune from liability for tort claims under R.C. Chapter 2744. *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, ¶ 15. In the first tier, the court applies the general rule that a political subdivision is immune from liability incurred during the performance of either a governmental or proprietary function. *Id.*; *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, ¶ 11; R.C. 2744.02(A)(1). That immunity, however, is subject to the five exceptions contained in R.C. 2744.02(B). *Doe* at ¶ 12. Accordingly, the second tier of the analysis requires a court to determine whether any of the R.C. 2744.02(B) exceptions apply. *Riffle* at ¶ 15. If the court answers affirmatively, then it must move to the third tier: determining whether any of the R.C. 2744.03 defenses against liability require the court to reinstate immunity. *Riffle* at ¶ 15; *Doe* at ¶ 12.

{¶ 13} When a political subdivision moves for summary judgment on the basis of immunity, the political subdivision bears the burden of showing that it is immune under the first tier of the immunity test. *Ohio Bell Telephone Co. v. Columbus*, 10th Dist. No. 09AP-113, 2009-Ohio-5126, ¶ 10. The burden then shifts to the plaintiff to set forth evidence that creates a genuine issue of material fact regarding the existence of one of the exceptions to immunity. *Id.*; *Summerville v. Columbus*, 10th Dist. No. 04AP-1288, 2005-Ohio-5158, ¶ 17. As we stated in *Summerville*:

> [W]hen sovereign immunity is established by one who has moved for summary judgment, the nonmovant's responsive burden, pursuant to Civ.R. 56(E), includes the requirement that he or she demonstrate the existence of an applicable exception to sovereign immunity. In order to avoid summary judgment, then, the nonmovant must demonstrate the existence of a genuine issue of fact with respect to the applicability of one of the exceptions set forth in R.C. 2744.02(B).

*Id.*

{¶ 14} Here, there is no dispute that the city established its immunity under the first tier of the immunity test. Pursuant to R.C. 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property

allegedly caused by any act or omission * * * in connection with a governmental or proprietary function." The provision of emergency medical services constitutes a governmental function. *Riffle* at ¶ 2; R.C. 2744.01(C)(2)(a). Consequently, the city is not liable to the Koeppens unless the Koeppens can demonstrate that an R.C. 2744.02(B) exception applies.

{¶ 15} The Koeppens focus solely the exception found in R.C. 2744.02(B)(1), which imposes liability for damages "caused by the negligent operation of any motor vehicle." The Koeppens contend that paramedics Endicott and Klein negligently operated the ambulance in two ways: (1) they were negligent in driving a vehicle that had such a significant history of mechanical issues, and (2) they were negligent in driving away from Maureen Koeppen after they knew that the ambulance had sprayed fluid on her.

{¶ 16} We will address the second basis for liability first. In response to that basis, the city argues that the paramedics' decision to leave rather than offer assistance does not constitute operation of a vehicle. Thus, the city asserts, R.C. 2744.02(B)(1) does not except from immunity the negligence claim based on the failure to assist. We agree.

{¶ 17} "[T]he exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved." *Doe*, 122 Ohio St.3d 12, 2009-Ohio-1360, at ¶ 26. Thus, unless the alleged negligence occurs in the actual driving or moving of a vehicle, R.C. 2744.02(B)(1) does not apply.

{¶ 18} A public employee may perform acts connected to a vehicle that do not involve the driving or moving of the vehicle. In *Doe*, the Supreme Court of Ohio held that supervision of student passengers was not part of driving or moving a school bus. *Id.* at syllabus. In a case more analogous to this one, the Ninth District Court of Appeals held that the R.C. 2744.02(B)(1) exception did not apply to the decision of police officers to initiate and continue a high-speed chase. *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 2002-Ohio-222, ¶ 28 (9th Dist.). The court held that the R.C. 2744.02(B)(1) exception "applies only where an employee *negligently operates* a motor vehicle; decisions concerning whether to pursue a suspect and the manner of pursuit are beyond the scope of the exception for negligent operation of a motor vehicle." (Emphasis sic.) *Id.*; *accord Perry v. Liberty Twp.*, 11th Dist. No. 2012-T-0056, 2013-Ohio-741, ¶ 22 (quoting and applying *Shalkhauser*).

{¶ 19} Here, the Koeppens allege that the paramedics' decision to drive away from Maureen Koeppen was negligent. The Koeppens do not contend that any aspect of the driving itself was negligent; they instead challenge the choice to leave rather than to stay and offer assistance. Because the alleged negligence did not occur in the actual driving or moving the ambulance, the R.C. 2744.02(B)(1) exception does not apply.

{¶ 20} In addition to arguing that the failure to assist is not part of driving or moving the ambulance, the city also argues that the Koeppens presented no evidence that the failure to assist caused Maureen Koeppen injury. Absent this evidence, the city contends, the Koeppens have not created a genuine issue of material fact that precludes summary judgment in the city's favor. We agree.

{¶ 21} The R.C. 2744.02(B)(1) exception only applies when the alleged injuries are "caused by" the negligent operation of a vehicle. To establish causation, the Koeppens adduced the affidavit testimony of Maureen Koeppen, who testified that she had no history of illness prior to being sprayed with liquid on August 6, 2013. Koeppen began feeling poorly after the incident, and she was diagnosed with aplastic anemia approximately two and one-half weeks later. The Koeppens also introduced a document from Maureen Koeppen's medical records entitled "Patient Education – Diseases and Procedure." That document reads:

> **What causes aplastic anemia?** – Aplastic anemia is caused by damage to your bone marrow. Some people are born with damaged bone marrow. In older children or adults, many things can damage bone marrow, including:
>
> - Certain medicines used to treat arthritis and epilepsy
>
> - Certain chemicals used in industry and farming
>
> - Infections from viruses
>
> - Problems with your body's infection fighting system
>
> But for many people, doctors don't know the cause of aplastic anemia.

(R. 47, at 3.)

{¶ 22} At best, this evidence might demonstrate that the fluid sprayed on Maureen Koeppen caused her to develop aplastic anemia. However, the evidence does not show

that the paramedics contributed to the development of that condition by failing to stop and assist Koeppen. Conceivably, the paramedics could have helped Koeppen by dousing her with water or performing some other early intervention. On the other hand, it is equally conceivable that the damage to Koeppen was done upon exposure to the fluid. Without evidence, we can only speculate, and speculation is insufficient to establish a question of fact regarding causation. *See Mills v. Best Western Springdale*, 10th Dist. No. 08AP-1022, 2009-Ohio-2901, ¶ 20 ("It is well settled that the issue of proximate cause is not subject to speculation and that conjecture as to whether a breach caused the particular damage is insufficient as a matter of law."); *Lhamon v. Prater*, 3d Dist. No. 1-09-34, 2009-Ohio-5904, ¶ 26 (" 'If evidence on the question of proximate cause is so meager and inconclusive that a finding of proximate cause would rest on speculation and conjecture, the defendant is entitled to summary judgment as a matter of law.' ").

{¶ 23} In sum, we conclude that the Koeppens have not established that the R.C. 2744.02(B)(1) exception to immunity applies to their claim that the paramedics negligently failed to assist Maureen Koeppen after the incident. We thus find that the trial court erred in not granting the city summary judgment on that claim.

{¶ 24} Next, the Koeppens assert that the R.C. 2744.02(B)(1) exception applies to their claim that the paramedics were negligent in driving a vehicle that had a significant history of mechanical issues. In response, the city asserts that the Koeppens have failed to demonstrate that the paramedics' operation of the ambulance was negligent.

{¶ 25} To prove negligence, a plaintiff must establish: (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages. *Cromer v. Children's Hosp. Med. Ctr.*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 23. " 'Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.' " *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989). The duty element of negligence may be established by common law, statute, or by the particular circumstances of a given case. *Chambers v. St. Mary's School*, 85 Ohio St.3d 563, 565 (1998). The existence of a duty is a question of law for the court to determine. *Wallace* at ¶ 22.

{¶ 26} Where a statute imposes a specific duty for the safety of others, failure to perform that duty is negligence per se. *Chambers* at 565. When negligence per se applies, evidence that a defendant violated the statute conclusively proves that the defendant breached a duty owed to the plaintiff, and thus, to recover, the plaintiff need only prove proximate cause and damages. *Id.* Not all duty statutes are amenable to negligence per se. Where a statute contains only a general, abstract description of a duty, "a plaintiff proving that a defendant violated the statute must nevertheless prove each of the elements of negligence in order to prevail." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496 (2000).

{¶ 27} Here, the Koeppens allege that the city violated R.C. 4153.02(A), which states, "No person shall drive or move * * * on any highway any vehicle * * * which is in such unsafe condition as to endanger any person." R.C. 4153.02(A), however, is a general duty statute to which negligence per se is inapplicable. *Woods v. Ohio Dept. of Rehab. & Corr.*, 132 Ohio App.3d 780, 783-84 (10th Dist.1999). Consequently, R.C. 4153.02(A) does not serve as a basis for imposing a duty in tort upon the city, and the alleged violation of R.C. 4153.02(A) does not prove that the city fell below the standard of care.

{¶ 28} When neither common law nor statute impose a duty, the existence of a duty depends on the foreseeability of the injury. *Wallace* at ¶ 23; *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). Duty turns on foreseeability because, "[a]s a society, we expect people to exercise reasonable precautions against the risks that a reasonably prudent person would anticipate." *Cromer* at ¶ 24. If a reasonable person would not foresee a risk, then we do not expect people to guard against that risk, and, consequently, the law does not impose such a duty on the defendant. *Id.*; *accord Gedeon v. East Ohio Gas Co.*, 128 Ohio St. 335, 338 (1934) ("No one is bound to take care to prevent consequences which, in the light of human experience, are beyond the range of probability. Only when the injured person comes within the circle of those to whom injury may reasonably be anticipated does the defendant owe him a duty of care.").

{¶ 29} Usually, the foreseeability of harm depends on the defendant's knowledge, as a person cannot guard against risks he does not know about. *Menifee* at 77. In determining whether an injury was foreseeable, a court may consider "only those circumstances which [the defendant] perceived, or should have perceived," at the time of

the alleged negligent act. *Id.* "Until specific conduct involving an unreasonable risk is made manifest by the evidence presented, there is no issue to submit to the jury." *Id.*

{¶ 30} Here, we must determine whether the city had a duty to guard against the risk that fluid would spray from the ambulance. To do that, we must examine the ambulance's repair records. If those records show that the city knew or should have known that the spray would occur, then the city had a duty to undertake reasonable precautions to prevent it.

{¶ 31} The record contains work orders reflecting repairs performed on the ambulance from January 5, 2011 to September 12, 2013. In 2013, the ambulance underwent repairs in March, May, June, July, and August. In March 2013, mechanics fixed an oil leak. In May 2013, mechanics repaired the air conditioning unit on the ambulance. In June and July 2013, mechanics fixed various lights on the ambulance, removed and replaced the rear leveling valves and dump valve solenoids, and installed a new clutch fan solenoid, fan belt, idler pulley, and belt tensioner.

{¶ 32} On July 28, 2013, the ambulance failed to start. Mechanics determined that the "shoreline" used to keep the mobile data computers charged had failed, and consequently, the ambulance's battery died. The shoreline was replaced.

{¶ 33} Two days after the August 6, 2013 incident, the city returned the ambulance to the repair shop because it was "running sluggish[l]y" and had "no pick up on acceleration." (R. 54, exhibit No. 7.) Examination of the engine revealed problems with the injectors and other components. Those problems were serious enough that a new engine was installed.

{¶ 34} Review of the repair records reveals that none of records show that fluid had previously sprayed from the ambulance in the manner Maureen Koeppen described. Thus, there is no prior incident that would have made a second such incident foreseeable.

{¶ 35} The Koeppens point to the ambulance's engine as the culprit for the spray. They contend that, based on the repair records, "[i]t should have been clear by July 2013 that something was seriously awry" with the ambulance's engine. (Appellee's brief, at 22.) Without the assistance of a mechanic to explain how the condition of the engine in July 2013 would affect the ambulance's performance, we have difficulty gauging the validity of this assessment. Nevertheless, for purposes of argument, we will assume that it is true. The question before us, then, is whether a reasonable person would have foreseen that the

"something" that was seriously awry in the engine would cause the engine to spray fluid from below the windshield onto nearby people and objects. There are two gaps in the evidentiary record that impede this analysis. The first stumbling block is the lack of any evidence proving that it is even possible for liquid to spray from an engine in the manner Maureen Koeppen described. Assuming that a malfunction in the engine could result in such spray, then if the city knew or should have known of that malfunction and continued to operate the ambulance, the spray would have been foreseeable. This is where the analysis hits the second stumbling block as the record contains no evidence that the city knew or should have known of a malfunction in the engine that could lead to the engine spraying liquid on bystanders.

{¶ 36} Given the multiple holes in the evidence, we conclude that the Koeppens have not demonstrated that a reasonable person would have foreseen that the ambulance would spray fluid on Maureen Koeppen. Therefore, the city did not owe the Koeppens a duty to guard against such spray.

{¶ 37} Moreover, even if the city had a duty, the Koeppens failed to show what exactly the city did, or did not do, that breached the standard of ordinary care. Where the doctrine of res ipsa loquitur is not involved, the mere happening of an accident or injury is not evidence of negligence. *Wise v. Timmons*, 64 Ohio St.3d 113, 116 (1992); Keeton, Dobbs, Keeton, & Owen, *Prosser and Keeton on the Law of Torts*, Section 39, 242 (5th Ed.1984). Rather, " 'specific acts or omissions indicating failure on the part of the defendant to exercise due care must be alleged as the direct and proximate cause of the injury, and the burden is upon the plaintiff to prove the same.' " *Wise* at 116, quoting *St. Marys Gas Co. v. Brodbeck*, 114 Ohio St. 432 (1926), paragraph one of the syllabus; *accord Boles v. Montgomery Ward & Co.*, 153 Ohio St. 381, 388-89 (1950) (a plaintiff must show precisely "how and why an injury occurred—to develop facts from which it can be determined by the jury that the defendant failed to exercise due care and that such failure was a proximate cause of the injury").

{¶ 38} Generally, a defendant must "exercise that degree of care and caution that an ordinarily careful and prudent person would exercise under similar circumstances." *Cromer*, 142 Ohio St.3d 257, 2015-Ohio-229, at ¶ 27. Without proof of specific acts or omissions, a factfinder cannot adjudge whether the defendant's conduct fell below the standard of care. Dobbs, Hayden, & Bublick, *The Law of Torts*, Section 168 (2d Ed.2011).

To determine whether a defendant acted reasonably, a factfinder needs to know "what precise physical actions the plaintiff claims the defendant should have done differently to present less risk." *Id.*

{¶ 39} Here, the Koeppens do not identify the malfunction that caused the spray to emit from the ambulance. Without knowing the malfunction, a factfinder cannot determine what the city could have done, but did not do, to safeguard against the incident here. A factfinder, therefore, cannot decide if the exercise of ordinary care would have corrected the malfunction or not. Consequently, the Koeppens failed to adduce evidence to create a question of fact regarding whether the city breached the standard of ordinary care.

{¶ 40} In sum, we conclude that the Koeppens have not established a genuine issue of material fact as to whether the paramedics were negligent in driving the ambulance. Consequently, the R.C. 2744.02(B)(1) exception does not apply to that claim, and the trial court erred in denying the city summary judgment on that claim.

{¶ 41} As a final matter, we must address the Koeppens' argument that we should affirm the denial of summary judgment because they have not concluded discovery. When the Koeppens filed their complaint on August 30, 2013, the clerk issued a schedule that set June 6, 2014 as the dispositive motion deadline and June 20, 2014 as the discovery cut-off date. The city moved for summary judgment on the last date possible— June 6, 2014. Less than one week later, the Koeppens filed an unopposed motion to extend the discovery cut-off date to September 19, 2014.

{¶ 42} While the motion for an extension was pending, the Koeppens filed their memorandum in opposition to summary judgment. The Koeppens argued that the R.C. 2744.02(B)(1) exception to immunity applied, and they supported this argument with evidence, including Maureen Koeppen's deposition and affidavit, an excerpt from Maureen Koeppen's medical records, Endicott's deposition, and over two years of repair records for the ambulance. Despite this variety of evidence, the Koeppens represented to the court that their discovery was not complete. In an affidavit attached to the memorandum in opposition, an attorney for the Koeppens stated that the Koeppens sought an extension of the discovery cut-off date because they still needed to gather evidence regarding Maureen Koeppen's illness and the ambulance's repair and maintenance history. Importantly, the Koeppens' attorney did not aver that the Koeppens

lacked adequate evidence to respond to the city's summary judgment motion. Moreover, the Koeppens did not request a continuance to obtain evidence necessary for opposing summary judgment. Rather, the Koeppens requested that, if the trial court did not deny the city summary judgment based on the evidence submitted, the trial court permit them to submit additional evidence once they completed discovery.

{¶ 43} On July 2, 2014, the trial court granted the Koeppens' motion to extend the discovery cut-off date to September 19, 2014. The Koeppens did not request a subsequent extension. The trial court issued a judgment denying the city's motion for summary judgment on December 30, 2014.

{¶ 44} Initially, we must dispel any supposition that the Koeppens sought Civ.R. 56(F) relief from the trial court. Pursuant to Civ.R. 56(F), a trial court may deny summary judgment, grant a continuance, or order other just relief if a "party cannot for sufficient reasons stated present by affidavit *facts essential to justify the party's opposition*." (Emphasis added.) The Koeppens never claimed that they lacked facts essential to justify their opposition to the city's summary judgment motion. Instead, the Koeppens sought to hedge their bets. They opposed summary judgment on evidence they believed was adequate to support their position, but on the chance they were wrong, they asked the court to tell them so and allow them to present more evidence.

{¶ 45} Additionally, this case is not like *Tucker v. Webb Corp.*, 4 Ohio St.3d 121 (1983), which the Koeppens rely upon. In *Tucker*, the defendant moved for summary judgment before the institution of any substantial discovery. The plaintiff noted that fact in his memorandum in opposition, and he stated that he needed more discovery to properly respond to the summary judgment motion. The trial court, without allowing additional time for discovery, granted the defendant summary judgment. The Supreme Court reversed the grant of summary judgment, finding that the plaintiff was allotted insufficient time to discover the essential facts of the case. *Id.* at 122-23.

{¶ 46} This case differs significantly from *Tucker*. Here, the Koeppens had an adequate period—approximately ten months even without the extension—in which to engage in discovery. Unlike the parties in *Tucker*, the parties in this case engaged in meaningful discovery, including the exchange of documents and the deposition of two key witnesses. Also, unlike the defendant in *Tucker*, the Koeppens never stated that they did

not have sufficient discovery to respond to a motion for summary judgment.  *Tucker*, therefore, provides the Koeppens no support.

{¶ 47} Essentially, the Koeppens ask this court to afford them time for additional discovery.  This is not relief that this court can grant.  At the Koeppens' request, the trial court expanded the deadline for completion of discovery to September 19, 2014.  The Koeppens do not allege any error in that decision.  The discovery period, therefore, is now over.

{¶ 48} The Koeppens had approximately three months between the discovery cut-off date and the issuance of the trial court's judgment in which to move to supplement the record with any evidence gathered before the end of the discovery period.  They did not do that.  Based on the evidence in the record, the city is entitled to summary judgment.

{¶ 49} For the foregoing reasons, we sustain the city's sole assignment of error.  We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this cause to that court so that it may enter judgment in the city's favor.

*Judgment reversed;*
*cause remanded with instructions.*

HORTON, J., concurs.
BRUNNER, J., concurs separately.

Brunner, J., concurring separately.

{¶ 50} I concur with the result and reasoning of the majority's decision, but I would note further that no evidence in the nature of expert testimony was offered in opposition to summary judgment that could have causally explicated Mrs. Koeppen's condition to the liquid alleged to have sprayed her from the ambulance.  Nor was there expert testimony offered to show just what fluid could have sprayed from the ambulance, based on its records of repair, which included replacing its engine very soon after this alleged incident.  It is not a matter that this incident did not happen.  That we reverse is more a matter of not having sufficient evidence in the record to create a genuine issue as to any material fact as to what happened that day and how it created or affected Mrs. Koeppen's condition.  Without such evidence, based on what evidence is in the record, Mrs. Koeppen's claims fail as a matter of law.

{¶ 51} The Koeppens offered a document from Mrs. Koeppen's medical records that aplastic anemia may be caused by certain chemicals used in industry and farming,

but that, for many people, doctors do not know the cause.  In many litigation situations whereby plaintiffs seek compensation for physical injury, discovery is delayed or extended in order to engage, interview, and depose experts.  Additionally, delays and extensions may be sought for an injured party to "doctor" a bit longer in order to better estimate the extent to which full physical recovery is possible, if at all.  The Koeppens sought no delays or extensions of discovery for such reasons, or as stated by the majority, in order to respond to the city's motion for summary judgment.  The evidence does not exist in the record to create a genuine issue as to any material fact that could move Mrs. Koeppen's case to trial and overcome the city's motion concerning immunity.  Accordingly, I must agree with the decision of the majority in reversing the decision of the trial court.

———————————