[Cite as *Robol v. Columbus*, 2025-Ohio-973.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Charles Robol, | : | |
| Plaintiff-Appellant, | : | No. 24AP-348 |
| | | (C.P.C. No. 22CV-7497) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| City of Columbus et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 20, 2025

**On brief:** *Charles Robol*, pro se. **Argued**: *Charles Robol*.

**On brief:** *Zach Klein*, City Attorney, and *Sarah Feldkamp*, for appellees. **Argued**: *Dexter W. Dorsey*.

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1}　Plaintiff-appellant, Charles Robol, pro se, appeals from a decision and entry of the Franklin County Court of Common Pleas granting the motion for judgment on the pleadings and motion for summary judgment of defendants-appellees, City of Columbus ("City"), Columbus Public Health, Columbus Division of Police, Angie Blevins, Michael Fielding, Andrew Ginther, Emmanuel Remy, Shannon Hardin, and Mysheika Roberts.　For the following reasons, we affirm.

## I.　Facts and Procedural History

{¶ 2}　On October 26, 2022, Mr. Robol filed a complaint against appellees related to appellees' implementation and enforcement of COVID-19 policies and protocols.　He then filed an amended complaint on February 1, 2023.

{¶ 3} In his amended complaint, Mr. Robol separates his allegations into four distinct "Event Groups" categorized by the timeframe and subject matter of the alleged conduct. "Event Group 1" relates to four Columbus City Council meetings from July 27 to October 5, 2020. During the four meetings in Event Group 1, Mr. Robol alleges Columbus City Councilmembers Mr. Hardin and Mr. Remy removed their face masks on occasion while Mr. Robol was required to keep his face mask on for the duration of the meetings. Mr. Robol seeks damages for the discomfort and reputational harm associated with his own wearing of a face mask, as well as compensation for possible risk to his life from potential COVID-19 exposure from the City Councilmembers' non-compliance with mask-wearing requirements. Under Event Group 1, Mr. Robol asserts claims for (1) negligence, (2) assault, (3) battery, (4) reputational damage from defamation, (5) trespass to chattels, (6) violation of the Takings Clause, (7) intentional infliction of emotional distress, (8) violation of his right to the free exercise of religion under 42 U.S.C. 1983 and the Religious Freedom Restoration Act, 42 U.S.C. 2000bb, (9) violation of his right to the freedom of speech under 42 U.S.C. 1983, and (10) conspiracy to deprive him of civil rights under 42 U.S.C. 1985. (Am. Compl. at ¶ 24-37.)

{¶ 4} "Event Group 2" relates to an incident at the Columbus Public Health building on October 26, 2020. According to his amended complaint, Mr. Robol sought to discuss the alleged non-compliance with mask wearing he witnessed at City Council meetings with Mr. Fielding, an assistant health commissioner with Columbus Public Health. The situation escalated, and Mr. Robol was escorted from the building by police. Under Event Group 2, Mr. Robol asserts claims for (1) assault, (2) battery, (3) false imprisonment, (4) trespass to chattels, (5) violation of the Takings Clause, (6) violation of his right to the free exercise of religion under 42 U.S.C. 1983 and 42 U.S.C. 2000bb, (7) violation of his right to the freedom of speech under 42 U.S.C. 1983, and (8) conspiracy to deprive him of civil rights under 42 U.S.C. 1985. Additionally, Mr. Robol seeks injunctive relief against his ban from the Columbus Public Health building.

{¶ 5} "Event Group 3" occurred on July 26, 2021, when Mr. Robol attempted to enter a Columbus City Council meeting. Mr. Robol alleges he was detained by security guards and barred from attending the meeting. For this event group, Mr. Robol raises similar claims as those he raised under Event Group 2, including (1) assault, (2) battery, (3)

false imprisonment, (4) trespass to chattels, (5) violation of the Takings Clause, (6) violation of his right to the free exercise of religion under 42 U.S.C. 1983, and (7) violation of his right to the freedom of speech under 42 U.S.C. 1983.

{¶ 6} "Event Group 4" occurred on December 8, 2021 and in the months immediately preceding that date. Mr. Robol alleges he attempted to register for press events conducted by Mr. Hardin but was denied access. Mr. Robol alleges that, on December 8, 2021, he attempted to join the press pool at a press event hosted by Mr. Ginther, the Mayor of Columbus, but was physically separated from other members of the press and barred from asking any questions. Mr. Robol's claims related to this event group include claims for (1) assault, (2) battery, (3) trespass to chattels, (4) violation of the Takings Clause, (5) violation of his right to the free exercise of religion under 42 U.S.C. 1983 and 42 U.S.C. 2000bb, (6) violation of his right to the freedom of speech under 42 U.S.C. 1983, (7) conspiracy to deprive him of civil rights under 42 U.S.C. 1985, and (8) interference with prospective economic advantage.

{¶ 7} Mr. Robol seeks compensatory damages, lost income, pain and suffering, and other alleged damages totaling over $13 billion. He also requests injunctive relief, a letter of apology from Mr. Ginther and Mr. Hardin, costs, and reasonable attorney fees.[1]

{¶ 8} After filing an answer to the amended complaint, on January 22, 2024, appellees filed a combined motion for judgment as a matter of law and motion for summary judgment. Appellees argued the claims related to Event Group 1 were time-barred by the applicable statute of limitations. Appellees additionally argued, in the alternative, that all claims under Event Group 1 related to the exercise of a governmental function such that political subdivision immunity applies. Further, appellees argued Ms. Blevins, Mr. Fielding, Mr. Ginther, Mr. Remy, Mr. Hardin, and Ms. Roberts are entitled to immunity because they were acting within the scope of their employment and did not act in a wanton or willful manner. Appellees also argued Mr. Robol's complaint failed to meet notice pleading standards, and Mr. Robol lacked standing related to Event Group 1 for failure to

---

[1] On February 1, 2023, Mr. Robol filed a motion to add NBC4 WCMH-TV as a defendant. That same day, Mr. Robol filed his amended complaint which was largely identical to his initial complaint with additional allegations that NBC4 defamed him in its coverage of the third and fourth event groups. In a February 28, 2023 decision and entry, the trial court denied Mr. Robol's motion to add NBC4 as a party for Mr. Robol's failure to include a certificate of service. No further attempts were made to add NBC4 as a party.

allege any actual injury. To the extent any of Mr. Robol's claims would survive a motion for judgment on the pleadings, appellees argued his allegations did not present any genuine issues of material fact and, thus, appellees were entitled to summary judgment.

{¶ 9} Mr. Robol filed a motion to compel discovery on February 4, 2024, alleging appellees were not cooperating with his discovery requests. Appellees then moved for a protection order based on Mr. Robol's discovery demands. Subsequently, on February 23, 2024, Mr. Robol filed a memorandum in opposition to appellees' motion for summary judgment. Mr. Robol argued there remained genuine issues of material fact and appellees failed to cooperate with discovery requests.

{¶ 10} In a May 6, 2024 decision and entry, the trial court granted appellees' motion for summary judgment. The court found Mr. Robol lacked standing to bring the claims related to Event Group 1 and those claims were time-barred by the applicable statute of limitations. With respect to the second, third, and fourth event groups, the court found appellees were entitled to summary judgment, specifically finding the City of Columbus is immune from liability on the intentional tort claims, the City is entitled to judgment as a matter of law on Mr. Robol's claims under Title 42 of the United States Code, and the individual appellees are entitled to immunity. In resolving the motion for summary judgment, the court also noted Mr. Robol failed to make a Civ.R. 56(F) request for additional discovery in order to respond to the motion for summary judgment. However, the court determined even a proper Civ.R. 56(F) motion would not change the outcome of the motion for summary judgment. Finding each of Mr. Robol's claims suffered fatal defects, the court granted appellees' motion for summary judgment and dismissed the complaint with prejudice. Mr. Robol timely appeals. After the parties filed their briefs, Mr. Robol then filed, on January 15, 2025, a motion to take judicial notice of a December 2024 United States House of Representatives select subcommittee report on the coronavirus pandemic.

## II. Assignments of Error

{¶ 11} Mr. Robol raises the following six assignments of error for our review:

> [I.] not analyzing discriminatory religious class based animus.
>
> [II.] ignoring Appellant's actual claims for deprivation of rights.

[III.] not allowing discovery which prevented Appellant's own summary motions and establish his claims.

[IV.] finding claims lacked standing for event group 1.

[V.] finding claims barred by the statute of limitations.

[VI.] finding political subdivision and individual immunity.

(Sic passim.) For ease of discussion, we address Mr. Robol's assignments of error out of order.

## III. Standard of Review and Applicable Law

{¶ 12} An appellate court reviews a trial court's grant of summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898, ¶ 9 (10th Dist.). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 2010-Ohio-6529, ¶ 9 (10th Dist.). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 13} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the summary judgment motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating the non-moving party has no evidence to support the non-moving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment. *Dresher* at 293. Where the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or

otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 12 (10th Dist.); Civ.R. 56(E).

## IV. Fifth Assignment of Error – Statute of Limitations

{¶ 14} In his fifth assignment of error, Mr. Robol argues the trial court erred in finding the applicable statute of limitations operates to bar his claims related to Event Group 1.

{¶ 15} R.C. 2744.04(A) contains the statute of limitations for actions brought against political subdivisions. *Riscatti v. Prime Properties Ltd. Partnership*, 2013-Ohio-4530, ¶ 20. Pursuant to R.C. 2744.04(A), "[a]n action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function . . . shall be brought within two years after the cause of action accrues." The two-year limitations period in R.C. 2744.04(A) applies to both political subdivisions and the employees thereof. *Pearson v. Columbus*, 2014-Ohio-5563, ¶ 10 (10th Dist.), citing *Davis v. Clark Cty. Bd. of Commrs.*, 2013-Ohio-2758, ¶ 23 (2d Dist.).

{¶ 16} Additionally, a claim brought under a federal law that does not provide its own statute of limitations is subject to the applicable general or residual statute of limitations governing personal injury actions in the state. *Nadra v. Mbah*, 2008-Ohio-3918, ¶ 1, citing *Owens v. Okure*, 488 U.S. 235 (1989); *Dotson v. Lane*, 360 Fed. Appx. 617, 619, fn. 2 (6th Cir. 2010), citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-61 (1987). R.C. 2305.10 is Ohio's general statute of limitations and contains a two-year statute of limitations. *Dublin v. Bansek*, 2010-Ohio-2372, ¶ 7 (10th Dist.), citing *Nadra* at ¶ 1.

{¶ 17} For purposes of the statute of limitations, an action accrues at the time of the commission of the wrongful act. *Qualls v. Peregrine Health Servs.*, 2022-Ohio-4644, ¶ 15 (10th Dist.), citing *Harris v. Liston*, 86 Ohio St.3d 203, 205 (1999). The events relating to Mr. Robol's claims under Event Group 1 occurred between July 27 and October 5, 2020. However, Mr. Robol did not file his complaint until October 26, 2022, more than two years after the events described in Event Group 1. Thus, the claims related to Event Group 1 are barred by R.C. 2744.04(A) and 2305.10.

**{¶ 18}** Mr. Robol acknowledges the two-year statute of limitations in R.C. 2744.04(A) but asserts the doctrine of equitable tolling should apply to extend the limitations period. The doctrine of equitable tolling extends statutory deadlines for parties who, through no fault of their own or lack of diligence, were prevented from complying with those deadlines. *Strother v. Columbus*, 2022-Ohio-4097, ¶ 29 (10th Dist.), citing *In re Regency Village Certificate of Need Application*, 2011-Ohio-5059, ¶ 36 (10th Dist.). To be entitled to equitable tolling, a litigant must demonstrate (1) he has diligently pursued his rights, and (2) an extraordinary circumstance stood in his way and prevented him from timely filing. *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, ¶ 8 (10th Dist.), citing *In re Regency Village Certificate of Need Application* at ¶ 37. Courts apply the doctrine of equitable tolling "sparingly and only in exceptional circumstances." *Roach* at ¶ 8, citing *Moore v. Dept. of Rehab. & Corr.*, 2011-Ohio-1607, ¶ 21 (10th Dist.), and *Engler v. Adjutant Gen.*, 2018-Ohio-2273, ¶ 9 (10th Dist.) A determination of whether equitable tolling is appropriate is made on a case-by-case basis. *Strother* at ¶ 29, citing *Holland v. Florida*, 560 U.S. 631, 653 (2010). Generally, application of the doctrine of equitable tolling is available only in compelling cases justifying a departure from established procedure. *Roach* at ¶ 8, citing *Sharp v. Ohio Civ. Rights Comm.*, 2005-Ohio-1119, ¶ 11 (7th Dist.).

**{¶ 19}** Here, Mr. Robol does not demonstrate either that he diligently pursued his rights or that an extraordinary circumstance stood in his way preventing the timely filing. Instead, Mr. Robol admits he delayed filing his complaint to avoid what he perceives as potential political implications if he were to timely file his complaint, stating he did not want his complaint to be viewed as attempting to influence any upcoming elections. He further argues equitable tolling should apply because of the nature of his claims, asserting the issues he presents deserve the court's attention. Despite his personal conviction in both the merits of his claims and his perception of potential political implications of a timely filing, we do not find Mr. Robol's voluntary decision to delay the filing of his complaint constitutes the type of exceptional circumstances warranting application of the doctrine of equitable tolling. *Roach* at ¶ 8.

**{¶ 20}** Because the doctrine of equitable tolling does not apply to the instant matter, we agree with the trial court that the two-year statute of limitations in R.C. 2744.04(A) and 2305.10 operates to bar Mr. Robol's claims related to Event Group 1. Accordingly, the court

did not err in granting summary judgment to appellees on the claims related to Event Group 1. We overrule Mr. Robol's fifth assignment of error.

## V. Fourth Assignment of Error – Standing

{¶ 21} In his fourth assignment of error, Mr. Robol argues the trial court erred in concluding he lacked standing to bring the claims related to Event Group 1 because he failed to allege an actual injury. Having already concluded the court did not err in determining the statute of limitations operates to bar the claims related to Event Group 1, Mr. Robol's fourth assignment of error regarding lack of standing on those same claims is moot and we will not address it. *See Grandview Hts. v. B.S.H.*, 2023-Ohio-940, ¶ 12 (10th Dist.), quoting *Grove City v. Clark*, 2002-Ohio-4549, ¶ 11 (10th Dist.) ("[a]s a general matter, courts will not resolve moot issues," and an issue is moot when it " 'involve[s] no actual genuine, live controversy, the decision of which can definitely affect existing legal relations' ") (Further quotations omitted.). *See also Darr v. Livingston*, 2017-Ohio-841, ¶ 13 (10th Dist.), citing *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55 ("An issue becomes moot when it presents only a hypothetical or academic question, and a judicial resolution of the issue would have no practical significance."); *State v. Gideon*, 2020-Ohio-5635, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court."). Therefore, Mr. Robol's fourth assignment of error is rendered moot.

## VI. Sixth Assignment of Error –Immunity

{¶ 22} In his sixth assignment of error, Mr. Robol argues the trial court erred in determining appellees were entitled to immunity under R.C. Chapter 2744 for his intentional tort claims. Through this assignment of error, Mr. Robol disagrees with the court's determination of immunity for both the City and for the individual employees of the City.

{¶ 23} We are mindful that, under the second, third, and fourth event groups, Mr. Robol asserts claims under both state and federal law. Our analysis under this assignment of error relates only to appellees' claim of immunity for the state law tort claims and is not related to Mr. Robol's federal law claims under 42 U.S.C. 1983, 1985, and 2000bb. *See Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 31 ("R.C. 2744.09(E) forbids the application of [R.C. Chapter 2744] to civil actions based on federal law."); R.C.

2744.09(E) (the general grant of immunity in R.C. Chapter 2744 does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States").

## A. The City's Immunity

{¶ 24} R.C. Chapter 2744 governs political subdivision immunity. To determine whether a political subdivision is entitled to immunity pursuant to R.C. Chapter 2744, a court engages in a three-tiered analysis. *Scott v. Kashmiry*, 2015-Ohio-3902, ¶ 14 (10th Dist.), citing *Yonkings v. Piwinski*, 2011-Ohio-6232, ¶ 18 (10th Dist.), citing *Hubbard v. Canton City School Bd. of Edn.*, 2002-Ohio-6718, ¶ 10. First, the court determines whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in the exercise of a governmental or proprietary function. R.C. 2744.02(A)(1); *Hubbard* at ¶ 10-11. If an entity is entitled to immunity under the first tier, the court moves to the second tier of the analysis to determine whether any of the five exceptions to immunity in R.C. 2744.02(B) apply. *Id.* at ¶ 12. If any of those exceptions are applicable, the court then determines, under the third tier of the analysis, whether the political subdivision can reinstate immunity by demonstrating one of the defenses to liability set forth in R.C. 2744.03 applies. *Scott* at ¶ 14, citing *Yonkings* at ¶ 18, citing *Elston v. Howland Local Schools*, 2007-Ohio-2070, ¶ 12.

{¶ 25} When a political subdivision moves for summary judgment on the basis of immunity, the political subdivision carries the burden of demonstrating it is immune under the first tier of the immunity analysis. *Koeppen v. Columbus*, 2015-Ohio-4463, ¶ 13 (10th Dist.), citing *Ohio Bell Tel. Co. v. Columbus*, 2009-Ohio-5126, ¶ 10 (10th Dist.). Mr. Robol does not dispute that the City is a political subdivision, but he argues the trial court erroneously determined the City was engaged in a governmental or proprietary function when it enforced the City's COVID-19 protocols. We disagree.

{¶ 26} R.C. 2744.01(C) provides two alternative routes to determine whether a function is governmental for purposes of an immunity analysis. *Moore v. Lorain Metro. Hous. Auth.*, 2009-Ohio-1250, ¶ 12. Pursuant to R.C. 2744.01(C)(1), a function of a political subdivision is governmental if it satisfies any of the following:

> (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

> (b) A function that is for the common good of all citizens of the state;
>
> (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

R.C. 2744.01(C)(1)(a) through (c); *Moore* at ¶ 12. Alternatively, a function is governmental if it is among the specific functions listed in R.C. 2744.01(C)(2). As relevant here, "[t]he enforcement or nonperformance of any law" is one of those listed functions. R.C. 2744.01(C)(2)(i); *Moore* at ¶ 12.

{¶ 27} Mr. Robol asserted tort claims against the City for assault, battery, false imprisonment, trespass to chattels, and interference with prospective economic advantage, all related to the City's enactment and enforcement of policies and procedures related to the COVID-19 pandemic. Though Mr. Robol argues his claims do not involve a governmental function under R.C. 2744.01(C)(2)(i) because the City could not enforce what he deems an illegitimate law, he ignores that the City's response to and handling of the COVID-19 pandemic fall squarely within the alternative definition of governmental function contained in R.C. 2744.01(C)(1). *See DSS Servs., L.L.C. v. Eitel's Towing, L.L.C.*, 2019-Ohio-3158, ¶ 15 (10th Dist.) ("a function is governmental if it meets one [of] the three independent standards enumerated in R.C. 2744.01(C)(1)(a) through (c)"). Having established it was engaged in a governmental function, the City satisfied its burden of demonstrating it is entitled to immunity under the first tier of the analysis. *Koeppen* at ¶ 13.

{¶ 28} Under the second tier of the immunity analysis, the burden on a motion for summary judgment shifts to the plaintiff to demonstrate that a genuine issue of material fact exists regarding the applicability of a statutory exception to immunity. *Koeppen* at ¶ 13, citing *Ohio Bell Tel.*, 2009-Ohio-5126 at ¶ 10. Here, Mr. Robol does not argue that one of the statutory exceptions to immunity contained in R.C. 2744.02(B) applies, nor does he point to any Civ.R. 56 evidence demonstrating there exists a genuine issue of material fact regarding one of the statutory exceptions. Accordingly, our analysis ends, and the City is entitled to immunity on Mr. Robol's intentional tort claims. *DSS* at ¶ 12, citing *Harris v.*

*Columbus*, 2016-Ohio-1036, ¶ 32 (10th Dist.) (if the court finds none of the exceptions to immunity apply under the second tier of the analysis "then the analysis ends, and the political subdivision retains its general grant of immunity").

## B. Individual Immunity

{¶ 29} Mr. Robol additionally argues under this assignment of error that the trial court erred in determining Mr. Hardin, Mr. Remy, Mr. Ginther, Ms. Roberts, and Mr. Fielding were entitled to immunity on his intentional tort claims of assault, battery, false imprisonment, trespass to chattels, and interference with prospective economic advantage.

{¶ 30} A determination of whether an employee of a political subdivision is entitled to immunity involves a different analysis than the three-tiered analysis used for a political subdivision. *Lambert v. Clancy*, 2010-Ohio-1483, ¶ 10. R.C. 2744.03(A)(6) generally provides employees of a political subdivision with immunity from lawsuits and liability. *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 2021-Ohio-4096, ¶ 7. However, employees of a political subdivision are not personally immune from liability if (1) the acts or omissions of the employee were manifestly outside the scope of their employment or official responsibilities, (2) the acts or omissions of the employee in the course and scope of their employment were done with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) another section of the Revised Code expressly imposes civil liability upon the employee. R.C. 2744.03(A)(6)(a) through (c); *Lambert* at ¶ 10; *Maternal Grandmother* at ¶ 7. Wanton misconduct and reckless misconduct are distinct from negligence, and employees of political subdivisions remain immune from liability for negligence. *Maternal Grandmother* at ¶ 8.

{¶ 31} "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 33. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligence conduct." *Id.* at ¶ 34.

{¶ 32} Mr. Robol asserts the individual appellees at a minimum acted recklessly when they removed him from the Columbus Public Health building, denied him entry to a Columbus City Council meeting, denied him a press pass, and refused to allow him to ask

questions at a press event. However, the non-moving party cannot survive a motion for summary judgment with unsupported assertions and conclusions. *Aurora Bank FSB v. Stevens*, 2014-Ohio-1713, ¶ 8, 11 (10th Dist.) (the non-moving party on a motion for summary judgment "may not rest upon the mere allegations or denials of the pleadings" but must "set forth specific facts showing that there is a genuine issue for trial"), citing *Todd Dev. Co. v. Morgan*, 2008-Ohio-87, ¶ 11, citing Civ.R. 56(E). Mr. Robol does not support his argument with any Civ.R. 56 evidence demonstrating a genuine issue of material fact exists that the individual appellees acted with a conscious disregard of or indifference to a known or obvious risk of harm that was unreasonable under the circumstances. Mr. Robol's disagreement with the individual appellees' conduct does not create a genuine issue of material fact as to whether the conduct was reckless. Thus, Mr. Robol cannot overcome the presumption of immunity for the employees of the political subdivision under R.C. 2744.03(A)(6). *A.J.R. v. Lute*, 2020-Ohio-5168, ¶ 26, quoting *Dohme v. Eurand Am., Inc.*, 2011-Ohio-4609, ¶ 21 (a plaintiff cannot create a genuine issue of material fact as to whether an employee of a political subdivision acted recklessly "by making general, unsupported allegations" but " 'must show that the issue to be tried is genuine' "). Instead, the Civ.R. 56 evidence here demonstrates the individual appellees were acting within the scope of their employment and did not perversely disregard a known risk. *Id*. at ¶ 26-27. Therefore, the individual appellees were entitled to immunity under R.C. 2744.03(A)(6) for Mr. Robol's tort claims related to the second, third, and fourth event groups.

{¶ 33} We also note that, to the extent Mr. Robol argues Mr. Hardin and Mr. Remy acted recklessly when they removed their face masks during portions of City Council meetings, we have already determined Mr. Robol's individual claims against Mr. Hardin and Mr. Remy related to Event Group 1 are time-barred under the applicable statute of limitations.

{¶ 34} Because the City and the individual appellees are entitled to immunity on Mr. Robol's claims of assault, battery, false imprisonment, trespass to chattels, and interference with prospective economic advantage, the trial court did not err in granting appellees' motion for summary judgment on those claims. Accordingly, we overrule Mr. Robol's sixth assignment of error.

## VII. First Assignment of Error – Religious Freedom

{¶ 35} In his first assignment of error, Mr. Robol argues the trial court erred in granting appellees' motion for summary judgment on his claims under 42 U.S.C. 1983 and 2000bb for the alleged infringement of his right to religious freedom. More specifically, Mr. Robol asserts the City interfered with his First Amendment right to the free exercise of religion when it implemented and enforced face mask policies during the COVID-19 pandemic.

### A. 42 U.S.C. 1983 and the Free Exercise Clause

{¶ 36} 42 U.S.C. 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

To prevail on a claim under Section 1983, a plaintiff must demonstrate (1) the conduct was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a federal statutory or constitutional right. *Boddie v. Landers*, 2016-Ohio-1410, ¶ 18 (10th Dist.), quoting *Miller v. Leesburg*, 1998 Ohio App. LEXIS 5645, *19 (10th Dist. Dec. 1, 1998), citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). (Further quotations and citations omitted.)

{¶ 37} The First Amendment to the United States Constitution protects a person's ability to freely exercise their religion. *Freshwater v. Mt. Vernon City School Dist. Bd. of Edn.*, 2013-Ohio-5000, ¶ 86; U.S. Const., amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."). "The protections of the Free Exercise Clause apply whenever the government 'regulates or prohibits conduct because it is undertaken for religious reasons.' " *Id.*, quoting *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 532 (1993).

{¶ 38} A plaintiff may prove a free exercise violation "by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral'

or 'generally applicable.' " *Kennedy v. Bremerton School Dist.*, 597 U.S. 507, 525 (2022), quoting *Emp. Div. v. Smith*, 494 U.S. 872, 879-81 (1990). Thus, a government policy will survive First Amendment scrutiny if it is generally applicable and neutral toward religion. *Id.*, citing *Lukumi* at 546.

{¶ 39} Mr. Robol asserts the City infringed upon his right to the free exercise of religion when it implemented a face mask policy in response to the COVID-19 pandemic. Ordinance 1643-2020, the City's mask ordinance, required all persons to wear a mask in public spaces. The ordinance did not regulate, or even mention, any religious activity, religious creed, or religious affiliation. Thus, the face mask policies Mr. Robol challenges are both neutral and generally applicable. *Kennedy* at 525.

{¶ 40} Despite the general applicability and neutrality of the mask ordinance, Mr. Robol nonetheless asserts the City violated his rights under the Free Exercise Clause because the ordinance violated his Christian beliefs, forced him to worship a false god, and had the effect of mocking the tenets of his faith. Though we do not question the sincerity of Mr. Robol's interpretation of his religion, we are mindful that a government action is not unconstitutional merely because it incidentally burdens religious practices. *See Kentucky ex rel. Danville Christian Academy, Inc. v. Beshear*, 981 F.3d 505, 509 (6th Cir. 2020), citing *Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020). Thus, even if Mr. Robol is motivated by a sincerely held religious belief, his belief "is not determinative where there is a neutral rule of general applicability." *Id.*, citing *Smith*, 494 U.S. 872.

{¶ 41} Because the City's face mask policy was a neutral rule of general applicability, Mr. Robol cannot show a genuine issue of material fact related to his allegation of a violation of his right to the free exercise of religion. Thus, the trial court did not err in granting appellees' motion for summary judgment on Mr. Robol's free exercise claim under 42 U.S.C. 1983.

**B. 42 U.S.C. 2000bb – The Religious Freedom Restoration Act**

{¶ 42} Mr. Robol also brought a religious exercise claim under 42 U.S.C. 2000bb, the Religious Freedom Restoration Act. *See Doe v. Congress of the United States*, 891 F.3d 578, 591 (6th Cir. 2018) (noting the constitutional analysis of a violation of the Free Exercise Clause is distinct from a claim under the Religious Freedom Restoration Act). The Religious Freedom Restoration Act provides that the "Government shall not substantially

burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the Government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000bb-1(a) through (b)(1) and (2). To succeed on a claim under the Religious Freedom Restoration Act, a plaintiff must prove: (1) the plaintiff seeks to engage or avoid engaging in conduct constituting an exercise of religion; (2) the Government has placed a substantial burden on that exercise of religion; and (3) the Government either lacks a compelling interest in imposing the burden or has another less restrictive means to achieve its compelling interest. *Doe* at 585.

{¶ 43} "The substantial-burden test asks whether the Government is effectively forcing plaintiffs to choose between engaging in conduct that violates sincerely held religious beliefs and facing a serious consequence." *Doe* at 589. *See also Holt v. Hobbs*, 574 U.S. 352, 361 (2015), quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014) (construing the term "substantial burden" as requiring plaintiffs to " 'engage in conduct that seriously violates their religious beliefs' "). "[T]he Government substantially burdens an exercise of religion when it 'place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . or effectively bar[s] his sincere faith-based conduct.' " *Doe* at 589, quoting *Haight v. Thompson*, 763 F.3d 554, 565 (2014).

{¶ 44} Not every imposition on religious exercise is a substantial burden. *Doe* at 590, citing *Livingston Christian Schools v. Genoa Charter Twp.*, 858 F.3d 996, 1003 (6th Cir. 2017). To be considered "substantial," a burden must have some degree of severity. *Id.*, citing *Livingston Christian Schools* at 1003. The determination of whether there exists a substantial burden utilizes an objective, rather than subjective, analysis. *Id.* Importantly, a substantial burden "must be more than a 'mere inconvenience.' " *Id.*, quoting *Livingston Christian Schools* at 1009.

{¶ 45} Without doubting the sincerity of Mr. Robol's belief that wearing a face mask violates his religious beliefs, we note that Mr. Robol does not allege, much less demonstrate through Civ.R. 56 evidence, that the face mask policies imposed any more than a mere inconvenience to his religious beliefs. *See Doe*, 891 F.3d at 590-92 (describing the type of serious consequence courts have deemed to be a substantial burden and concluding

plaintiffs failed to show carrying and using United States currency inscribed with the motto "In God We Trust" constituted a substantial burden on their exercise of religion because plaintiffs alleged only that they prefer to use cash but are not required to do so and can instead use other widely available forms of payment like checks or credit cards), citing *Hobby Lobby* at 726 (the consequence for the plaintiff corporations was paying "an enormous sum of money"); *Holt* at 361 (the inmate plaintiff faced "serious disciplinary action" for contravening the Arkansas Department of Correction's policy that he could not grow a beard); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 425 (2006) (the use of the sacramental substance could trigger criminal prosecution); *compare Livingston Christian Schools*, 858 F.3d at 1009 (requiring students to travel an additional 12.1 miles was not a substantial burden but a mere inconvenience). Mr. Robol does not point to any evidentiary materials, including his own deposition testimony, that create a genuine issue of material fact as to whether the City's COVID-19 policies substantially burdened the exercise of his religion. Accordingly, Mr. Robol cannot substantiate his claim under the Religious Freedom Restoration Act, and the trial court did not err in granting appellees' motion for summary judgment on Mr. Robol's claims under 42 U.S.C. 2000bb. We therefore overrule Mr. Robol's first assignment of error.

## VIII. Second Assignment of Error – Deprivation of Civil Rights and Freedom of Speech

{¶ 46} In his second assignment of error, Mr. Robol argues the trial court erred in granting appellees' motion for summary judgment on his claims of violation of his constitutional rights to the freedom of speech, freedom of expression, freedom of the press, due process, unconstitutional taking, and conspiracy to deprive him of civil rights. His arguments under this assignment of error relate to the City's face mask policy and to his allegations that he was not given a press pass or permitted to ask questions during a press event. Mr. Robol advanced these arguments through claims brought under 42 U.S.C 1983 and 1985.

### A. Claims Under 42 U.S.C. 1983

{¶ 47} As outlined above, 42 U.S.C. 1983 provides a remedy for violations of substantive rights contained in the United States Constitution. *Boddie*, 2016-Ohio-1410 at

¶ 18.  Under Section 1983, Mr. Robol seeks recovery for alleged violations of his First Amendment rights to the freedom of speech, freedom of expression, and freedom of the press, his Fourteenth Amendment right to due process, and his rights under the Takings Clause of the Fifth Amendment.

### 1. First Amendment Claims

{¶ 48} Mr. Robol alleges appellees violated his First Amendment rights to freedom of speech, freedom of expression, and freedom of the press by requiring him to wear a face mask, by not allowing him to ask questions of Mr. Ginther during a press event, and by refusing to issue him a press pass.  The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

{¶ 49} The First Amendment generally prohibits the government from restricting expression based on its message, ideas, subject matter, or content.  *Bey v. Rasawehr*, 2020-Ohio-3301, ¶ 20, quoting *Ashcroft v. Am. Civ. Liberties Union*, 535 U.S. 564, 573 (2002), quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65 (1983), quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).  However, the First Amendment right to free speech is not absolute, and the government may regulate speech in a manner consistent with the Constitution.  *Id.* at ¶ 21, citing *Virginia v. Black*, 538 U.S. 343, 358 (2003).

{¶ 50} A government regulation of speech can be either content-based or content-neutral.  *Bey* at ¶ 22-23.  When a regulation is content-based, it is presumptively unconstitutional and is subject to strict scrutiny, requiring the regulation to be the least restrictive means to achieve a compelling state interest.  *Id.* at ¶ 22, citing *Reed v. Gilbert*, 576 U.S. 155, 163 (2015).  On the other hand, when a regulation is content-neutral, meaning it does not regulate speech based on what is being communicated, and instead regulates the time, place, and manner of speech, it will be deemed constitutional as long as it (1) promotes an important governmental interest unrelated to the suppression of free speech, and (2) does not burden substantially more speech than necessary to further the important governmental interest.  *Id.* at ¶ 23, quoting *Turner Broadcasting Sys., Inc. v. Fed.*

*Communications Comm.*, 520 U.S. 180, 189 (1997); *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

{¶ 51} Mr. Robol argues the City's face mask requirement violated his freedom of speech and expression because the choice not to wear a face mask is a form of expressing his opposition to the City's response to the COVID-19 pandemic. The City's mask ordinance is content-neutral, and nothing in the terms of the ordinance suggests the purpose is to regulate speech. And we agree with appellees the face mask policy promotes an important governmental interest in controlling the spread of COVID-19 that is unrelated to the suppression of speech. *See Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 18 (2020) ("[s]temming the spread of COVID-19 is unquestionably a compelling interest"). Further, though Mr. Robol opposes the City's face mask policy, he does not demonstrate the policy burdens substantially more speech than is necessary to further the important governmental interest of responding to the COVID-19 pandemic. Thus, Mr. Robol cannot show the existence of a genuine issue of material fact that the City's face mask policy violated his freedom of speech.

{¶ 52} Mr. Robol next argues the City violated his right to the freedom of speech and expression when it refused to allow him to ask questions of Mr. Ginther at a press conference. On this point, we find any suppression of Mr. Robol's speech was incidental to the City's important interest in providing a safe and orderly environment.

{¶ 53} "When speech and nonspeech elements are part of the same course of conduct, 'a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.' " *Bellecourt v. Cleveland*, 2004-Ohio-6551, ¶ 6, quoting *O'Brien*, 391 U.S. at 376. A regulation is sufficiently justified where (1) the regulation is within the constitutional power of the Government, (2) the regulation furthers an important or substantial governmental interest, (3) the governmental interest is not related to the suppression of free expression, and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the governmental interest. *Id.*, quoting *O'Brien* at 377.

{¶ 54} The City has an important governmental interest in maintaining order and preserving public safety. *See Bellecourt* at ¶ 8-9. In Mr. Robol's own description of Mr. Ginther's press event, which Mr. Robol recorded and was played during his deposition,

he bypassed security after he was unable to show a press credential, invited police to arrest him, attempted to enter unauthorized areas, became disruptive, and used profanity directed at security and police. The City allowed Mr. Robol to attend the press conference but advised him he could not ask questions. The City's response of instructing Mr. Robol to stand in a different area and not shout questions at Mr. Ginther was not related to the suppression of Mr. Robol's expression and was no greater than was necessary to further the City's interest in maintaining order and preserving public safety during the press event. Therefore, Mr. Robol cannot demonstrate the existence of a genuine issue of material fact that the incidental limitation on his First Amendment freedoms was not justified. *O'Brien*, 391 U.S. at 377. Appellees are entitled to summary judgment on Mr. Robol's 42 U.S.C. 1983 claims related to the freedom of speech and expression.

**{¶ 55}** Mr. Robol additionally argues under his 42 U.S.C. 1983 claim that the City violated the First Amendment guarantee of freedom of the press when it refused to issue him a press pass to attend certain events held by Mr. Hardin and Mr. Ginther. Through this argument, Mr. Robol argues the City is required to issue press credentials to him because he self-identifies as a journalist. Beyond his reliance on the general First Amendment protection of freedom of the press, Mr. Robol offers no legal support for his position that the First Amendment provides an individual right to access a press pass.

**{¶ 56}** To the extent Mr. Robol challenges, more generally, the government's ability to regulate or restrict access to certain events, his argument fails. "Simply because the government may own a piece of property . . . does not mean that property is open to all types of expressive activity at all times." *Miller v. Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010), quoting *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983) ("[the] State, no less than a private owner of property, has power to preserve the property under its control for the use which it is lawfully dedicated"). (Internal quotations omitted.) To determine whether a government restriction of speech on publicly owned property is constitutional, we consider (1) whether the speech is protected under the First Amendment, (2) the type of forum and what constitutional standard applies to that type of forum, and (3) whether the restriction on speech satisfies the constitutional standard for the type of forum. *Miller* at 533, citing *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 559 (6th Cir. 2007).

{¶ 57} The United States Supreme Court recognizes three types of public fora: the traditional public forum, the designated public forum, and the limited public forum. *Miller* at 534, citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 469-70 (2009). A non-public forum "is a government-owned property that is not by tradition or governmental designation 'a forum for public communication.' " *Id.*, quoting *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007). "Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. Natl. Assn. for the Advancement of Colored People Legal Defense & Edn. Fund*, 473 U.S. 788, 806 (1985).

{¶ 58} A limited-access press conference is a non-public forum. *See, e.g., Cornelius* at 804-06; *John K. Maciver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 610 (7th Cir. 2021); *Kelly v. Lightfoot*, 2022 U.S. Dist. LEXIS 195708, *4 (N.D.Ill. Oct. 27, 2022) ("Mayor Lightfoot's press conferences fall under the non-public category because the forum is open only for selective access"). Thus, the City could regulate access to its limited-access press conferences so long as the regulations are reasonable and are "not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Edn. Assn.* at 46. Mr. Robol does not argue the City's method of issuing press passes is unreasonable, and he does not point to any Civ.R. 56 evidence demonstrating the existence of a genuine issue of material fact as to whether the denial of his request for a press pass was related to his viewpoint. Therefore, the City is entitled to summary judgment on Mr. Robol's 42 U.S.C 1983 claim related to the denial of his request for a press pass.

### 2. Fourteenth Amendment Claims

{¶ 59} Mr. Robol also asserts claims under 42 U.S.C. 1983 for "deprivation of rights" and denial of due process. The Fourteenth Amendment to the United States Constitution provides state governments shall not "deprive any person of life, liberty, or property, without due process of law." The due process guarantees of the Fourteenth Amendment include both procedural due process and substantive due process protections. *Freeman v. Ohio Elections Comm.*, 2024-Ohio-1223, ¶ 26 (10th Dist.). Procedural due process relates to the fairness of the procedures used in the state's decision making. *Id.*, quoting *Kistler v. Conrad*, 2006-Ohio-3308, ¶ 14 (10th Dist.). Substantive due process relates to the protection against arbitrary or wrongful government actions regardless of the fairness of

the procedures used to implement them. *Id.*, quoting *Kistler* at ¶ 14. We construe Mr. Robol's claims as asserting substantive due process violations.

{¶ 60} "In a substantive-due-process challenge, '[t]he first (and often last) issue . . . is the proper characterization of the individual's asserted right.' " *Stolz v. J & B Steel Erectors, Inc.*, 2018-Ohio-5088, ¶ 14, quoting *Blau v. Fort Thomas Pub. School Dist.*, 401 F.3d 381, 393 (6th Cir. 2005), citing *Reno v. Flores*, 507 U.S. 292, 302 (1993). A government action that infringes upon a fundamental right is subject to strict scrutiny, while a government action that does not involve a fundamental right need only be rationally related to a legitimate government interest. *Id.*, citing *State v. Lowe*, 2007-Ohio-606, ¶ 18.

{¶ 61} Mr. Robol argues the City's face mask policies infringed on his fundamental rights without specifying which particular fundamental right is implicated by the City's action. As the Fourth District of Ohio recently noted, "there is no general constitutional right to wear, or to refuse to wear a face mask in public places." (Internal quotations and citations omitted.) *Martin v. Ohio Univ.*, 2023-Ohio-2511, ¶ 47 (4th Dist.). "While the government typically does not regulate what an individual must wear in the privacy of his or her own home, federal, state, and local governments may govern what must be worn in public spaces, particularly when the health and safety of the general public are at issue." (Internal quotations and citations omitted.) *Id.* Because Mr. Robol does not identify a fundamental right that is implicated by the City's action, the City's face mask requirement need only be rationally related to a legitimate government interest. Like the trial court below, we find the City's face mask requirement in response to the COVID-19 pandemic was rationally related to the City's legitimate government interest in protecting the health and safety of the general public. Thus, Mr. Robol is not able to demonstrate a genuine issue of material fact on his substantive due process claims. As a result, appellees are entitled to summary judgment on Mr. Robol's 42 U.S.C. 1983 claims related to substantive due process.

### 3. Fifth Amendment Takings Clause Claims

{¶ 62} Lastly, under his 42 U.S.C. 1983 claims, Mr. Robol alleges appellees engaged in an unconstitutional taking of his person when they forced him to adhere to the City's COVID-19 policies, including wearing a face mask. The Takings Clause of the Fifth Amendment to the United States Constitution provides private property shall not "be taken

for public use, without just compensation." The Takings Clause is understood to apply to direct appropriation of property, the practical ouster of an owner's possession of property, and overly burdensome regulations of property. *State ex rel. AWMS Water Solutions, L.L.C. v. Mertz*, 2020-Ohio-5482, ¶ 28, citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992), and *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). Mr. Robol does not allege appellees undertook the taking of any of his *property*, instead arguing appellees violated his personal liberty and infringed on his bodily autonomy. As the Takings Clause applies to property claims, Mr. Robol does not show the existence of a genuine issue of material fact that appellees engaged in an unconstitutional taking of his property. Thus, appellees are entitled to summary judgment on Mr. Robol's 42 U.S.C. 1983 claims under the Takings Clause of the Fifth Amendment.

## B. Conspiracy Claims Under 42 U.S.C. 1985

{¶ 63} Mr. Robol also asserts claims under 42 U.S.C. 1985. Pursuant to Section 1985, a plaintiff may seek damages against two or more persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. 1985(3). To establish a claim for conspiracy under 42 U.S.C. 1985(3), a plaintiff must demonstrate (1) a conspiracy involving two or more persons, (2) for the purpose of depriving the plaintiff of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) resulting injury to a person or property, or a deprivation of any right or privilege of a United States citizen. *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Additionally, courts generally "require 'some racial, or perhaps otherwise *class-based*, invidiously discriminatory animus behind the conspirators' action.' " (Emphasis in original.) *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022), quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

{¶ 64} Mr. Robol argues Ms. Roberts, Mr. Fielding, Mr. Remy, and Mr. Hardin conspired to deny him equal protection before the law. As the trial court notes, Mr. Robol failed to allege either in his amended complaint or in response to appellees' motion for summary judgment that the alleged conspiracy was motivated by racial or class-based discrimination. On appeal, Mr. Robol argues, for the first time, that the conspiracy was

motivated by appellees' religious discriminatory animus. However, a party may not raise new arguments for the first time on appeal. *Wu v. Northeast Ohio Med. Univ.*, 2019-Ohio-2530, ¶ 17 (10th Dist.) (failure to raise an argument in the trial court results in waiver of the right to raise it on appeal), quoting *Hunter v. Shield*, 2018-Ohio-2371, ¶ 23 (10th Dist.) (" 'even a de novo standard of review does not supersede the settled practice of not addressing issues raised for the first time on appeal' "). We are not persuaded by Mr. Robol's position that he impliedly argued the alleged conspiracy was motivated by religious discriminatory animus by separately raising religion-based claims in his complaint. Accordingly, the trial court did not err in granting appellees' motion for summary judgment on Mr. Robol's 42 U.S.C. 1985 claims.

{¶ 65} Having determined the trial court did not err in granting appellees' motion for summary judgment on Mr. Robol's 42 U.S.C. 1983 and 1985 claims, we overrule Mr. Robol's second assignment of error.

## IX. Third Assignment of Error – Discovery Dispute

{¶ 66} In his third assignment of error, Mr. Robol argues the trial court erred in ruling on appellees' motion for summary judgment without first ruling on his motion to compel discovery.

{¶ 67} A trial court has broad discretion to regulate discovery, and an appellate court will not reverse a trial court's decision to grant or deny a motion to compel discovery absent an abuse of discretion. *Anderson v. Bright Horizons Children's Ctrs., L.L.C.*, 2022-Ohio-1031, ¶ 99 (10th Dist.), citing *Ettayem v. Land of Ararat Invest. Group, Inc.*, 2020-Ohio-3006, ¶ 20 (10th Dist.). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 27.

{¶ 68} Appellees filed their motion for summary judgment on January 22, 2024. Prior to filing a response to the motion for summary judgment, Mr. Robol filed his motion to compel discovery on February 4, 2024. Subsequently, on February 23, 2024, Mr. Robol filed a memorandum in opposition to appellees' motion for summary judgment. The trial court then issued its May 6, 2024 decision and entry granting appellees' motion for summary judgment. In the decision and entry, the trial court acknowledged Mr. Robol's pending motion to compel discovery but did not formally rule on it.

{¶ 69} Mr. Robol argues the trial court abused its discretion in ruling on the summary judgment motion without first ruling on his motion to compel discovery. Where a trial court fails to mention or rule on a pending motion, an appellate court presumes the trial court implicitly denied the motion. *Columbus v. ACM Vision, V, L.L.C.*, 2021-Ohio-925, ¶ 22 (10th Dist.); *Geygan v. Geygan*, 2012-Ohio-1965, ¶ 30 (10th Dist.) A trial court's failure to expressly rule on a pending motion before entering final judgment does not, in and of itself, constitute an abuse of discretion. *ACM Vision* at ¶ 22.

{¶ 70} Here, although the trial court did not expressly rule on Mr. Robol's motion to compel, it acknowledged that the motion was pending and addressed Mr. Robol's discovery complaints raised in his response to the motion for summary judgment. As the trial court explained, Civ.R. 56(F) provides a mechanism for the non-moving party to obtain additional time to pursue discovery that may assist in responding to the motion for summary judgment. *Miller v. NWD 355 McConnell L.L.C.*, 2023-Ohio-3374, ¶ 12 (10th Dist.), citing *Jacobs v. Jones*, 2011-Ohio-3313, ¶ 58 (10th Dist.). Under Civ.R. 56(F), the party opposing the motion for summary judgment must provide an affidavit setting forth sufficient reasons why it cannot present sufficient facts by affidavit to support their opposition to the motion for summary judgment. *Miller* at ¶ 12, citing *Jacobs* at ¶ 58. The party requesting relief under Civ.R. 56(F) bears the burden of demonstrating the need for a continuance to obtain additional discovery. *Id.*, citing *Huntington Natl. Bank v. Bywood, Inc.*, 2013-Ohio-2780, ¶ 7 (10th Dist.). Mere allegations requesting a continuance to conduct more discovery are not sufficient reasons why a party cannot adequately respond to a motion for summary judgment under Civ.R. 56(F). *Id.*, citing *Jacobs* at ¶ 58.

{¶ 71} Mr. Robol neither made a formal Civ.R. 56(F) request nor identified, in his response to appellees' motion for summary judgment, what specific additional discovery he needed in order to adequately respond to appellees' specific arguments. Instead, he continued to argue access to additional discovery would generally reinforce his case. Mr. Robol did not allege he was unable to refute any of the core legal arguments appellees presented in their motion for summary judgment due to deficiencies in the discovery process. Despite Mr. Robol's failure to avail himself of the procedure in Civ.R. 56(F), the trial court further explained that even if Mr. Robol had made a Civ.R. 56(F) request, it would not have changed the outcome. Thus, the court gave due consideration to

Mr. Robol's discovery arguments even if it did not explicitly rule on his motion to compel. Accordingly, we cannot conclude the court abused its discretion in implicitly denying Mr. Robol's motion to compel discovery by ruling on appellees' motion for summary judgment. We overrule Mr. Robol's third assignment of error.

## X.  Motion to Take Judicial Notice

{¶ 72} After the parties filed their merit briefs, Mr. Robol filed a motion asking us to take judicial notice of a December 2024 final report of the United States House Select Subcommittee on the Coronavirus Pandemic.  Mr. Robol asserted in his motion that he submits the report "for objective findings that social distancing and masking interventions for COVID lacked scientific justification." (Jan. 15, 2025 Mot. to Take Judicial Notice at 1.)

{¶ 73} An appellate court may take judicial notice of adjudicative facts at any stage of the proceedings.  *State v. Murphy*, 2013-Ohio-5599, ¶ 23 (10th Dist.), citing Evid.R. 201. A court may only take judicial notice of facts "not subject to reasonable dispute."  *Id.*, citing Evid.R. 201(B); *State ex rel. Richard v. Chambers-Smith*, 2019-Ohio-1962, ¶ 12.  Even where a fact is capable of recognition under judicial notice, an appellate court will not take judicial notice if the fact should have been raised in the trial court.  *Id.*; *Richard* at ¶ 12, quoting *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 2008-Ohio-2565, ¶ 8, fn. 1 ("[a]lthough the taking of judicial notice is allowed at any stage of the proceedings, Evid.R. 201(F), it is not 'an exception to the rule that evidence must be timely offered in a judicial proceeding' ").

{¶ 74} The congressional subcommittee report contains statements that are  subject to dispute and new facts not before the trial court.  Additionally, a congressional subcommittee report conducted and issued years after the onset of COVID-19 has no bearing on the issues presented in this case: the government's real-time response to the coronavirus pandemic as it was happening.  Evid.R. 201(A) ("[t]his rule governs only judicial notice of adjudicative facts; i.e., *the facts of the case*") (Emphasis added.).  Thus, even if we could deem the facts "not subject to reasonable dispute," they have no relevance to Mr. Robol's appeal.  Therefore, we deny Mr. Robol's motion to take judicial notice of the congressional subcommittee report.

## XI.  Disposition

{¶ 75} Based on the foregoing reasons, the trial court did not err in granting appellees' motion for summary judgment on all of Mr. Robol's claims.  Having overruled Mr. Robol's first, second, third, fifth, and sixth assignments of error, rendering moot Mr. Robol's fourth assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed*;
*motion to take judicial notice denied.*

JAMISON, P.J., DORRIAN and EDELSTEIN, JJ., concur.

_____