[Cite as *State v. Edwards*, 2019-Ohio-3905.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-704 |
| | | (C.P.C. No. 10CR-2864) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Tommy L. Edwards, | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on September 26, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Timothy Young,* Ohio Public Defender, and *Carly M. Edelstein*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Tommy L. Edwards, appeals from a decision and entry of the Franklin County Court of Common Pleas denying his petition for postconviction relief. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} By indictment filed May 11, 2010, plaintiff-appellee, State of Ohio, charged Edwards with one count of possession of marijuana in violation of R.C. 2925.11, a fifth-degree felony. Edwards was one of four codefendants included in the same indictment. Edwards entered a plea of not guilty.

{¶ 3} Edwards filed several motions to suppress that the trial court ultimately denied, and the matter proceeded to trial. Following a jury trial, the trial court convicted

Edwards of one count of possession of marijuana and sentenced him to six months' incarceration. Edwards timely appealed his conviction, and this court affirmed. *State v. Edwards*, 10th Dist. No. 12AP-992, 2013-Ohio-4342.

{¶ 4} The indictment against Edwards and his subsequent conviction stemmed from an investigation conducted by two officers of the Reynoldsburg Police Department, Tye Downard and Shane Mauger. In a letter dated February 24, 2016, after Edwards had already served his sentence in his case, the state informed Edwards that Downard, who had testified in the trial against Edwards, had been arrested by the Federal Bureau of Investigation and charged federally with possession with intent to distribute drugs. Downard then committed suicide in the Delaware County Jail on February 21, 2016.

{¶ 5} Subsequently, on April 27, 2016, Mauger, who also testified against Edwards during his criminal trial, was charged in federal court with conspiracy to deprive persons of civil rights and federal program theft, charges stemming from allegations that Mauger falsified search warrant affidavits in order to steal from Reynoldsburg residents. Mauger entered a guilty plea to these charges and was sentenced on September 9, 2016.

{¶ 6} On February 14, 2017, Edwards filed a petition for postconviction relief, alleging the state used false testimony to obtain his conviction. Edwards alleged in his petition that during the investigation and at the time the officers searched Edwards' home, the officers had both been engaged in a longstanding conspiracy to violate the rights of Reynoldsburg residents. Edwards supported his petition for postconviction relief with the judgment entry from his criminal case, the criminal complaint in Downard's federal criminal case, the information in Mauger's criminal case, the United States' sentencing memorandum in Mauger's criminal case, the February 24, 2016 letter from the State, and Edwards' own affidavit.

{¶ 7} The state opposed Edwards' petition for postconviction relief, filing a March 29, 2017 memorandum contra. The state argued the evidence Edwards relied upon to support his petition for postconviction relief did not establish any link between Downard's and Mauger's criminal conduct and their specific investigation into Edwards' case. To the extent Edwards' petition sought to establish that the search warrant in his case was supported with false testimony, the state noted it was Downard, not Mauger, who obtained the search warrant in Edwards' case. The state supported its memorandum

contra with the search warrant used to search 220 Chatterly Lane and the search warrant affidavit Downard filed in support with the Franklin County Municipal Court.

{¶ 8} In a decision and entry dated August 28, 2018, the trial court denied Edwards' petition for postconviction relief. Specifically, the trial court concluded Edwards failed to satisfy his burden under R.C. 2953.21(D) to warrant a hearing by demonstrating substantive grounds for relief. The trial court determined the evidence relied upon by Edwards did not establish that Downard engaged in falsification of affidavits either generally or specifically in Edwards' case. Additionally, the trial court concluded Downard's and Mauger's falsification of information could not be imputed to the state. Thus, the trial court denied Edwards' petition for postconviction relief without a hearing. Edwards timely appeals.

## II. Assignment of Error

{¶ 9} Edwards assigns the following error for our review:

> The trial court abused its discretion in dismissing Tommy Edwards' petition without holding an evidentiary hearing because his petition provided sufficient operative facts to demonstrate that the use of false testimony to obtain a conviction in his case violated his due process rights. Fourteenth Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution; *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

## III. Standard of Review and Applicable Law

{¶ 10} " '[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.' " *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 7, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. Further, we review a trial court's decision to deny a postconviction petition without a hearing under an abuse of discretion standard. *State v. Boddie*, 10th Dist. No. 12AP-811, 2013-Ohio-3925, ¶ 11, citing *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 14. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} As a general matter, a petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment. *Sidibeh* at ¶ 8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). A petition for postconviction relief " 'is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record.' " *Id.*, quoting *State v. Murphy*, 10th Dist. No. 00AP-233 (Dec. 26, 2000). Thus, a postconviction petition does not provide a petitioner a second opportunity to litigate his or her conviction. *Id.*, citing *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 23. Instead, R.C. 2953.21 affords a petitioner postconviction relief " 'only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution.' " *Id.*, quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph four of the syllabus.

{¶ 12} Pursuant to R.C. 2953.21(A)(2), a petition for postconviction relief must be filed no later than 365 days after the expiration of the time for filing an appeal. A trial court may not entertain an untimely postconviction petition unless the petitioner initially demonstrates either (1) he was unavoidably prevented from discovering the facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation. R.C. 2953.23(A)(1)(a). If the petitioner can satisfy one of those two conditions, he must also demonstrate that but for the constitutional error at trial no reasonable finder of fact would have found him guilty. R.C. 2953.23(A)(1)(b). These requirements are jurisdictional. *See State v. Hollingsworth*, 10th Dist. No. 08AP-785, 2009-Ohio-1753, ¶ 8.

{¶ 13} The doctrine of res judicata places another significant restriction on the availability of postconviction relief. *Sidibeh* at ¶ 12. " 'Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.' " (Emphasis omitted.) *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), quoting *Perry* at paragraph nine of the syllabus. "Res judicata also implicitly bars a petitioner from

're-packaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *Hessler* at ¶ 27.

{¶ 14} Further, a petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition. *Sidibeh* at ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-13 (1980). To warrant an evidentiary hearing, the petitioner bears the initial burden of providing evidence demonstrating a cognizable claim of constitutional error. *Id.*, citing R.C. 2953.21(C); *Hessler* at ¶ 24. The trial court may deny the petitioner's postconviction petition without an evidentiary hearing "if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief." *Sidibeh* at ¶ 13, citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

## IV. Analysis

{¶ 15} In his sole assignment of error, Edwards' argues the trial court erred in denying his petition for postconviction relief without a hearing.

{¶ 16} As an initial matter, we note that Edwards' petition is untimely under R.C. 2953.23(A)(1). However, pursuant to R.C. 2953.23(A)(1), an untimely petition is permitted where the petitioner relies on evidence that he was unavoidably prevented from discovering. "The phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." *State v. Turner*, 10th Dist. No. 06AP-876, 2007-Ohio-1468, ¶ 11, citing *State v. McDonald*, 6th Dist. No. E-04-009, 2005-Ohio-798, ¶ 19. Here, the federal criminal cases against Downard and Mauger did not arise until February and April 2016, more than three years after Edwards' trial and conviction. Thus, we agree with the trial court that Edwards was unavoidably prevented from discovering the criminal conspiracy allegations against two of the state's witnesses during the time those witnesses investigated Edwards' criminal case, thus satisfying R.C. 2953.23(A)(1)(a).

{¶ 17} The next phase of the analysis under R.C. 2953.23(A)(1)(b) requires us to determine whether Edwards shows, by clear and convincing evidence, that but for the false testimony of Downard and Mauger, no reasonable factfinder would have found him guilty. The essence of Edwards' argument is that because Downard's and Mauger's criminal conduct dates back to 2006, it follows that both Downard and Mauger must have been

engaged in criminal conduct when they obtained the search warrant in Edwards' case in 2008. If the search warrant was obtained with falsified information, then Edwards asserts the trial court would have no choice but to grant his motion to suppress, ultimately leading to the court vacating his conviction. At minimum, Edwards asserts the trial court should have held a hearing on his petition for postconviction relief.

{¶ 18} The state asserts Edwards did not put forth sufficient operative facts that Downard and Mauger obtained the search warrant in Edwards' specific case based on falsified information or that Downard and Mauger provided false testimony at Edwards' trial. The documentation Edwards relies upon to support his petition for postconviction relief includes the federal criminal complaint against Downard and supporting affidavit. The supporting affidavit details Downard's alleged conduct related to the charge of possession of drugs with intent to distribute, including his use of a cooperating human source he first encountered after executing a search warrant at the person's house. The supporting affidavit makes no mention of Mauger, nor does it describe any instance in which Downard was alleged to have falsified information to obtain a search warrant.

{¶ 19} Edwards also provided documentation related to the federal criminal charges against Mauger, including the sentencing memorandum of the United States. In the sentencing memorandum, the federal government states that "[f]or nearly a decade, Shane Mauger stole money and property, and engaged in a conspiracy with Tye L. Downard to violate the constitutional rights of residents in Central Ohio." (Mauger Sentencing Memo. at 2.) The sentencing memorandum specifically noted "Mauger, as part of the conspiracy, caused search warrant affidavits containing false statements to be submitted to judges" and then participated in the execution of the search warrants knowing they were based on false information. (Mauger Sentencing Memo. at 2.) The sentencing memorandum went on to state that during and after police searches, Mauger and Downard would steal a portion of cash found in the homes they were searching and split the difference. Although the sentencing memorandum implicated Downard in the theft of currency during searches, it never alleged Downard participated in submitting false statements in affidavits in order to obtain search warrants.

{¶ 20} The specific allegations against Downard and Mauger regarding their conduct in their alleged criminal conspiracy are especially relevant because in Edwards'

case, it was Downard, not Mauger, who executed the affidavit in support of the search warrant. Though the sentencing memorandum from Mauger's criminal case implicates Downard in splitting the profits of the thefts with Mauger, it does not implicate Downard in using false statements in affidavits to obtain search warrants. At best, Edwards puts forth a theory about what possibly could have happened during the investigation into his case. However, a mere theory is not sufficient to warrant a hearing on a petition for postconviction relief; instead, as we noted above, to warrant a hearing, a petitioner must "demonstrate sufficient, operative facts to establish substantive grounds for relief." *Sidibeh* at ¶ 13, citing *Calhoun* at paragraph two of the syllabus.

{¶ 21} Edwards' documentation cannot be construed as providing sufficient operative facts that demonstrate that Downard provided false information in order to obtain the search warrant in his case. For these reasons, we conclude the trial court did not abuse its discretion in denying Edwards' petition for postconviction relief without a hearing. Thus, we overrule Edwards' sole assignment of error.

## V. Disposition

{¶ 22} Based on the foregoing reasons, the trial court did not abuse its discretion in denying Edwards' petition for postconviction relief without a hearing. Having overruled Edwards' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 23} I respectfully dissent and would sustain appellant's assignment of error and remand to the trial court for an evidentiary hearing on appellant's petition for postconviction relief. I believe appellant provided sufficient operative facts to warrant an evidentiary hearing on his petition for postconviction relief.

{¶ 24} The majority finds significant the fact that Downard, not Mauger, submitted the affidavit to the judge to obtain the search warrant for appellant's home. The majority

relies[1] on the Mauger Sentencing Memorandum statement that "*Mauger*, as part of the conspiracy, caused search warrant affidavits containing false statements to be submitted to judges" and then participated in the execution of the search warrants knowing they were based on false information. (Emphasis added.) (Majority Dec. at ¶ 19.)[2] However, I find to be significant, the statement preceding the statement upon which the majority relies, "[f]or nearly a decade, Shane Mauger stole money and property, *and engaged in a conspiracy with Tye L. Downard* to violate the constitutional rights of residents in Central Ohio." (Emphasis added.) (Majority Dec. at ¶ 19.)

{¶ 25} Both Downard and Mauger were involved in the investigation leading to the indictment and conviction of appellant. The affidavit of Columbus Police Detective Mabry, upon which Mabry relied to request a direct indictment of appellant, is part of the record before us. It states in part:

> On September 30, 2008 Detective T. Downard #98 of the Reynoldsburg Police Department conducted a search warrant of Tommy Edward's house at 220 Chatterly Lane and recovered marihuana and digital scales. Detective Downard conducted the search warrant after receiving complaints that Mr. Edwards was selling pounds of marihuana on the east side of Columbus and Reynoldsburg. The results of that investigation are included in that investigation. Columbus Police Officers and Reynoldsburg Detectives would like the results of that investigation to be used in indicting Mr. Edwards for conspiracy to distribute marihuana.

(Oct. 4, 2011 Appellant's Motion to Exclude Scientific Test Results, Ex. B at 10.)

---

[1] The *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, and *State v. Calhoun*, 86 Ohio St.3d 279 (1999), cases cited by the majority both considered petitions for postconviction relief alleging ineffective assistance of counsel. These claims were based in part on the affidavits of the petitioner and his family members, and credibility was an issue. The case before us does not involve claims of ineffective assistance of counsel. Furthermore, credibility is not an issue here. Nevertheless, one of the factors outlined in *Calhoun* to determine credibility of such affidavits, may be considered applicable here—whether the judge reviewing the postconviction relief petition also presided at the trial. In this case, the judge who presided over the motion to suppress and the trial was not the same judge as the judge who ruled on the petition for postconviction relief.

[2] The memorandum also reveals that in one specific case, Mauger caused an affidavit in support of a search warrant for a Reynoldsburg residence to be submitted to a judge which contained the false statement that Mauger had conducted a trash pull at the residence and had found marijuana in the trash. However, the trash did not contain any marijuana. Yet, Mauger submitted the affidavit to the judge, obtained the search warrant and participated in the search, knowing it was based on a falsehood. (Mauger Sentencing Memo. at 3.)

{¶ 26} Furthermore, our own decision regarding appellant's direct appeal of his case details the involvement of both Downard and Mauger:

> Detective Ty Downard is a narcotics detective for the Reynoldsburg Police Department and was assigned to investigate appellant's home at 220 Chatterly Lane. According to Downard, the Reynoldsburg Police Department received an anonymous tip on January 16, 2008, that appellant was selling "pounds of marijuana" on the east side of Columbus and Reynoldsburg and resided at 220 Chatterly Lane. (Tr. 32.) He further testified that "sometime later" the Columbus Police Department informed him of the surveillance and search of the Weirton Drive residence, as well as Berry's statement to police that appellant had instructed him to pick up marijuana from the Weirton Drive location and that appellant has sold marijuana for years. (Tr. 32.) After receiving the above tip and information, Downard stated he began conducting trash pulls at appellant's home. According to Downard, the first trash pull occurred on September 19, 2008, and he collected what appeared to be marijuana stems, seeds, and "shake." (Tr. 34.) According to Downard, he field tested the stems and seeds and it came back positive for marijuana.
>
> Downard testified he conducted surveillance on September 21, 2008 and observed appellant exit and enter the residence. Downard stated appellant's vehicle was registered to the 220 Chatterly Lane address. According to Downard, he conducted a second trash pull on September 26, 2008 and discovered marijuana stems and seeds, four roaches, and a letter of residence for 220 Chatterly Lane connecting the trash to appellant. Based on all of the above information and appellant's criminal history, Downard obtained a search warrant for narcotics.
>
> The suppression hearing concluded with closing statements. Appellant argued both of the search warrants were not "particularized enough to be sufficient" and were overbroad. (Tr. 50.) Specifically, appellant argued that the Weirton Drive warrant failed because the premises were "searched" ahead of time, and the Chatterly Lane warrant failed because its probable cause justification was based off information obtained at Weirton Drive. *Appellant further argued the Chatterly Lane warrant was intentionally misleading.* In opposition, appellee argued exigent circumstances existed for the protective sweep at the Weirton Drive home and that the warrants did not contain misleading information. Finally, appellee argued, based on all

the evidence presented, there was probable cause for each warrant.

* * *

The trial court held probable cause also existed for the Chatterly Lane home search, reasoning that, though each fact in the warrant individually would not be enough to satisfy probable cause, the totality of the facts alleged were sufficient.

Appellant filed a second motion to suppress, alleging the statements he made to Sergeant Shane Mauger of the Reynoldsburg Police Department after the search of his residence were taken in violation of his constitutional rights. Appellee filed a memorandum in opposition, and the trial court held a hearing on the motion.

At the second hearing, appellee presented the testimony of Mauger and Downard. According to Mauger, he conducted a tape recorded interview of appellant at his home while the search was coming to a close. Mauger testified that he advised appellant of his constitutional rights prior to any questioning. Mauger stated appellant must have indicated he understood his rights or he would not have continued with the interview. Appellant's response to Mauger's question, "[d]o you understand your rights" was inaudible on the audio tape. The suppression hearing concluded with closing arguments.

The trial court denied appellant's motion holding "[b]ased on the totality of these circumstances I find that the Defendant indicated that he understands his rights." (Tr. 165.) The holding was based on Mauger's testimony that he would not have continued with questioning if appellant had not in some way indicated he understood his rights and that, from the court's own interactions with appellant, he is an intelligent man who "is not shy about either invoking his rights or speaking his mind when he chooses to." (Tr. 165.) Having overruled both of appellant's motions to suppress, the case continued to trial.

Relevant to this appeal, the following evidence was adduced from the appellee's case-in-chief. Mauger was the team leader for the September 30, 2008 search of Chatterly Lane. According to Mauger, SWAT approached the home and knocked and announced their intention to enter. Once SWAT entered the home, Mauger testified his team secured the location and began executing the search warrant. Mauger stated he seized a "Wal-

> Mart bag" containing nine smaller bags of marijuana, a digital scale, baggies, and a letter of residence connecting the trash to appellant's home. (Tr. 233.)

(Emphasis added.) (Footnotes omitted.) *State v. Edwards*, 10th Dist. No. 12AP-992, 2013-Ohio-4342, ¶ 5-13.

{¶ 27} Taking all this into consideration, I would find appellant's petition, supporting affidavits, documentary evidence, and the trial record in this case demonstrate sufficient operative facts to establish substantive grounds for relief. Accordingly, I would find the trial court abused its discretion in not granting an evidentiary hearing before ruling on the petition. For the above reasons, I respectfully dissent.

———————————