[Cite as *State v. McDonald-Glasco*, 2025-Ohio-4926.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 25AP-498 |
| | | (C.P.C. No. 16CR-5691) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Tyrik McDonald-Glasco, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 28, 2025

**On brief:** *Tyrik McDonald-Glasco,* pro se.

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Seth L. Gilbert* for appellee.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Tyrik McDonald-Glasco, pro se, appeals from a June 17, 2025 decision and entry from the Franklin County Court of Common Pleas denying his petition for postconviction relief. For the reasons that follow, we affirm.

**I. Facts and Procedural History**

{¶ 2} On October 13, 2016, plaintiff-appellee, State of Ohio, charged McDonald-Glasco with one count of murder in violation of R.C. 2903.02, an unspecified felony (Count One); one count of felony murder in violation of R.C. 2903.02, an unspecified felony (Count Two); and one count of intimidation of a witness in a criminal case in violation of R.C. 2921.04, a third-degree felony (Count Three). Both murder charges carried accompanying firearm specifications pursuant to R.C. 2941.145(A). All charges related to the shooting death of D.H.

{¶ 3} The matter proceeded to trial on May 1, 2017. At the conclusion of the trial, the jury returned a not guilty verdict regarding the first count of murder. However, the jury returned a guilty verdict for felony murder, with the accompanying firearm specification, as well as the charge of intimidation of a witness.

{¶ 4} The trial court held a sentencing hearing on May 10, 2017. At the conclusion of the hearing, the trial court sentenced McDonald-Glasco to an aggregate term of incarceration of 18 years to life in prison. The sentence was journalized on May 12, 2017. On May 15, 2018, we affirmed the convictions on direct appeal. *State v. McDonald-Glasco*, 2018-Ohio-1918 (10th Dist.). We summarized the trial testimony as follows:

> At a jury trial beginning May 1, 2017, the state asked Anferny Slaughter to identify individuals from surveillance camera footage from the afternoon of October 2, 2016. Slaughter identified himself, McDonald-Glasco, Taneja Williams, Tivon Green, and Dajuan Crowley, who goes by the nickname "Boobie." The state then played the surveillance footage in court and asked Slaughter to describe what was happening in those images.
>
> Slaughter testified that on the day [D.H.] was killed, he was with Taneja near the Graham store. There was a group of children outside the store, and Slaughter identified one of those children as one of the girls who would later witness the shooting. [D.H.] was also outside the Graham store that day. Slaughter said he frequently bought marijuana from [D.H.].
>
> On the afternoon of October 2, 2016, Slaughter said he and Taneja went to McDonald-Glasco's house on Hildreth Avenue, and when they arrived they joined McDonald-Glasco, Crowley, and Green. Shortly after 3:30 p.m., Slaughter said Taneja told him that the group planned to fight [D.H.] that day. At that point, the group of five—Slaughter, McDonald-Glasco, Taneja, Crowley, and Green—went to the porch of an abandoned house on Greenway Avenue where they discussed their plan.
>
> A short time later, Slaughter said Taneja called [D.H.] under the guise of meeting him to purchase marijuana. At that point, the five of them left the abandoned house. Taneja walked up the street and turned down an alley where [D.H.] was supposed to meet her, and McDonald-Glasco, Crow[le]y, Green, and Slaughter went down Greenway Avenue and entered a different alley behind [D.H.]'s house. Slaughter said the two alleys intersect in a "T" behind [D.H.]'s house.
>
> Slaughter testified he rode ahead of the group on his bicycle to confirm whether [D.H.] had arrived in the alley. After spotting [D.H.], Slaughter returned and told Crowley, McDonald-Glasco, and Green that [D.H.] was

there. When the three men entered the alley, McDonald-Glasco had put his hood up.

Slaughter testified that Taneja met with [D.H.] in the alley, as planned, and then Taneja walked out of the alley. At that point, Slaughter said he saw Green and Crowley walk up to [D.H.] while McDonald-Glasco waited in the other alley in view of the others. Slaughter testified that he was talking to two little girls in the alley when he heard a gun cock followed by someone saying "No, no, don't do that," and then the sound of two gunshots. (Tr. Vol. 1 at 153.) Shortly after that, Slaughter said he saw Green and Crowley run past him while Green put a gun in his pants and Crowley put a gun under his shirt.

Additional surveillance footage showed McDonald-Glasco walking out of the alley after the shooting. After that, Slaughter said he returned to his aunt's house where he smoked marijuana with Taneja. Surveillance video from the Graham store a few minutes after the shooting showed Green, Crowley, and McDonald-Glasco walking in the same general direction, although McDonald-Glasco was not walking with Green and Crowley.

Slaughter testified that when police first interviewed him, he lied about knowing anything about [D.H.]'s death because he was afraid of retaliation from Green. However, Slaughter said he eventually agreed to testify truthfully in exchange for the state dismissing the murder charge against him. Slaughter testified that when [D.H.] was shot, Green, Crowley, and a third man in a white shirt were all in the alley with [D.H.], and that himself, McDonald-Glasco, and two little girls were nearby in the other alley within view of the shooting.

Michael B. Williams, Jr., a homeless Army veteran living on the streets of the east side of Columbus, testified he was in the alley when [D.H.] was shot. Michael identified a picture of Green as the shooter, and he said that at one point, Green pointed the gun at him. Michael testified McDonald-Glasco was present when Green shot [D.H.]. Additionally, Michael said he also saw two little girls in the alley as well as a young man on a bicycle. Michael testified that after the shooting, one of the men pointed a gun at the little girls and threatened them before everyone left the alleys.

Michael testified he did not immediately report what he had seen to police but, after speaking to [D.H.]'s girlfriend, he decided to come forward as a witness. In a photo array, Michael identified Green and Crowley and told police he thought that McDonald-Glasco looked like the other person he saw in the alley the day of the shooting. Aaron Mall, a detective with the Columbus Division of Police, testified about the identification procedure that Michael participated in.

Shabie Flowers, [D.H.'s] girlfriend, testified that she lived with [D.H.] at the corner of Greenway and Taylor Avenues in October 2016. Flowers testified [D.H.] sold marijuana and performed electrical services work to make a living, often selling marijuana in the alley behind their house. Typically, Flowers said that people who wanted to buy marijuana from [D.H.] would call [D.H.]'s phone, and then [D.H.] would ride his bicycle out to the alley to complete the transaction. Flowers testified she knew McDonald-Glasco, Taneja, Crowley, and Slaughter from the neighborhood. However, Flowers said she did not know Green.

Flowers testified she was at home when the shooting occurred. She said that after [D.H.] left the house that day, she heard three loud, close gunshots, and she ran out of the house. The home security video showed Taneja and McDonald-Glasco leaving the alley, and Flowers said she asked McDonald-Glasco what he had just done. Flowers testified McDonald-Glasco responded, "I don't know. I got to get up out of here." (Tr. Vol. 2 at 392.) After that, Flowers said two little girls came running out the alley, screaming that three young men just killed [D.H.] and threatened the little girls not to say anything.

Flowers testified she grabbed her gun and ran down the alley to [D.H.], where she found him lying face down with a gunshot wound to the back of his head. Flowers said she turned [D.H.] over and tried to revive him. She testified she removed everything from [D.H.]'s pockets. When police arrived, Flowers said she returned to her house and reviewed the home security videos, showing them to detectives. Within 15 minutes of the shooting, Flowers said her sister identified McDonald-Glasco on the video.

The next day, Flowers said McDonald-Glasco rode by her house in a gold or bronze vehicle, rolled down the window, pointed a gun at her, and told her that if she kept talking, she would be next. Flowers testified she called the police, and they asked her to help identify the vehicle. Flowers said she identified a photograph of a vehicle that looked like the vehicle McDonald-Glasco was in when he threatened her.

*McDonald-Glasco* at ¶ 3-16.

{¶ 5} On April 21, 2025, McDonald-Glasco filed a "petition to vacate or set aside judgment of conviction or sentence," which the trial court construed as a petition for postconviction relief. McDonald-Glasco, pursuant to R.C. 2953.21 et seq., raised eight claims in the petition. Relevant to the present case, McDonald-Glasco first claimed that the state violated *Brady v. Maryland*, 373 U.S. 83 (1963), as it never logged or disclosed the seizure of his cellphone at the time of the arrest. McDonald-Glasco alleged that the cellphone, discovered after the trial in a detective's desk, contained "potentially exculpatory

digital data." (Apr. 21, 2025 Petition at 3.)  According to McDonald-Glasco, the cellphone could have demonstrated his location or cast doubt on the state's timeline.  The second claim alleged that McDonald-Glasco's trial counsel was ineffective in failing to investigate the digital evidence.  "*Despite knowing the phone was in police custody*, trial counsel never sought digital analysis or presented evidence from it."  (Emphasis added.)  (Apr. 21, 2025 Petition.)  On April 28, 2025, McDonald-Glasco filed a motion for leave to amend petition for postconviction relief with "supplemental grounds for relief," which set forth additional claims 9 through 12.  On April 29, 2025, the state filed a memorandum in opposition to the collective petition for postconviction relief.  A reply brief was filed on April 30, 2025.  On May 22, 2025, McDonald-Glasco filed a second supplement to the petition.  On May 28, 2025, the state filed a memorandum in opposition.  A reply brief was filed on June 2, 2025.

{¶ 6}  On June 17, 2025, the trial court dismissed the collective petition for postconviction relief.  The trial court concluded that the petition was untimely, and McDonald-Glasco failed to demonstrate the applicability of any of the statutory exceptions under R.C. 2953.23(A).

{¶ 7}  McDonald-Glasco filed a timely appeal.

## II.  Standard of Review

{¶ 8}  A petitioner is afforded a statutory avenue to seek postconviction relief under R.C. 2953.21.  "Postconviction relief is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record."  (Further citation and quotation omitted.)  *State v. Rutan*, 2024-Ohio-593, ¶ 4 (10th Dist.).  To be sure, a petition for postconviction relief is a civil attack of a criminal judgment, not an appeal of the judgment or a venue to relitigate substantive issues raised on direct appeal.  *State v. Canas*, 2025-Ohio-1471, ¶ 12 (10th Dist.), citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999).  To succeed in a petition for postconviction relief, a petitioner must demonstrate a violation of his or her constitutional rights, which renders the judgment of conviction void or voidable.  *State v. Morris*, 2025-Ohio-1800, ¶ 7 (10th Dist.), citing *State v. Edwards*, 2019-Ohio-3905, ¶ 11 (10th Dist.); *State v. Jackson*, 2024-Ohio-2091, ¶ 25 (2d Dist.), citing R.C. 2953.21(A)(1)(a)(i).  "A trial court may deny a postconviction petition without an evidentiary hearing 'if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative

facts to establish substantive grounds for relief.' " *Rutan* at ¶ 4, quoting *State v. Sidibeh*, 2013-Ohio-2309, ¶ 13 (10th Dist.), citing *Calhoun* at paragraph two of the syllabus. The petitioner bears the burden of producing evidence of a cognizable claim of constitutional error. *Canas* at ¶ 12, citing *State v. Harris*, 2008-Ohio-2837, ¶ 7 (10th Dist.).

{¶ 9} Generally, we review the trial court's denial of a petition for postconviction relief without a hearing for an abuse of discretion. *See, e.g.*, *Rutan* at ¶ 4; *State v. Howard*, 2016-Ohio-504, ¶ 15 (10th Dist.). Appellate courts will not reverse a trial court's judgment under an abuse of discretion analysis unless the decision is unreasonable, arbitrary, or unconscionable. *State v. Foster*, 2024-Ohio-2924, ¶ 61 (10th Dist.), citing *State v. Wade*, 2021-Ohio-4090, ¶ 9 (10th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, the trial court dismissed McDonald-Glasco's petition for lack of jurisdiction as it was untimely under R.C. 2953.21. " '[T]he question whether a court of common pleas possesses subject-matter jurisdiction to entertain an untimely petition for postconviction relief is a question of law, which appellate courts review de novo.' " *State v. Apanovitch,* 2018-Ohio-4744, ¶ 24, quoting *State v. Kane*, 2017-Ohio-7838, ¶ 9 (10th Dist.).

### III. Assignments of Error

{¶ 10} McDonald-Glasco assigns the following seven assignments of error for our review:

> [1.] The trial court erred in finding that Appellant's Brady claim failed because the existence of the cell phone was "known to the defense," ignoring the State's failure to log or disclose the exculpatory evidence in violation of Appellant's constitutional due process rights.
>
> [2.] The trial court erred by holding that Appellant failed to meet the exceptions under R.C. 2953.23(A)(1) despite the presentation of newly discovered evidence and a valid Brady violation.
>
> [3.] The trial court abused its discretion in dismissing Appellant's petition without an evidentiary hearing, despite prima facie evidence of constitutional violations and actual innocence.
>
> [4.] The trial court erred in rejecting Appellant's ineffective assistance of counsel claim without addressing the failure to investigate or present digital evidence that could have exonerated Appellant.

[5.] The trial court erred by treating Appellant's claims as contradictory instead of recognizing their complementary nature under cumulative error doctrine.

[6.] The trial court erred in failing to apply equitable tolling based on police misconduct, where the lead detective hid critical evidence for years, which was only discovered after statutory deadline.

[7.] The trial court erred in failing to consider actual innocence and cumulative constitutional violations that rendered Appellant's trial fundamentally unfair.

(Sic passim.)

## IV. Analysis

{¶ 11} As McDonald-Glasco's seven assignments of error are intertwined, we will address them together. McDonald-Glasco contends that the trial court erred by failing to hold a hearing as to his petition for postconviction relief. McDonald-Glasco's assignments of error focus on the alleged *Brady* violation and claim of ineffective assistance of counsel.

{¶ 12} Under R.C. 2953.21(A)(2), a petition for postconviction relief must be filed no later than 365 days after the trial transcript is filed in the court of appeals in the direct appeal. *State v. Dudas*, 2024-Ohio-775, ¶ 1, citing R.C. 2953.21(A)(2). "A trial court lacks jurisdiction to entertain an untimely petition for post-conviction relief unless the petitioner demonstrates that one of the R.C. 2953.23(A) exceptions applies." *Morris* at ¶ 8, citing *Apanovitch* at ¶ 36. In order to demonstrate a trial court's jurisdiction to hear an untimely petition for postconviction relief, the petitioner must establish that "(1) he was unavoidably prevented from discovering the facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation." *Morris* at ¶ 8, citing R.C. 2953.23(A)(1)(a). If one of the two conditions is satisfied, the petitioner must then "demonstrate that, but for the constitutional error at trial, no reasonable finder of fact would have found him guilty." *Id.* at ¶ 8, citing R.C. 2953.23(A)(1)(b). The trial court also has jurisdiction to consider an untimely-postconviction petition if the petitioner establishes that he was convicted of a felony offense and the DNA testing performed under a specified statute establishes, by clear and convincing evidence, actual innocence of the offense at issue. R.C. 2953.23(A)(2).

{¶ 13} Here, the trial court's judgment entry was filed on May 12, 2017. The trial transcript was filed with this court on September 25, 2017. Thus, under R.C. 2953.21(A)(2), the April 2025 petition for postconviction relief was well outside the statutory deadline. R.C. 2953.21(A)(2); App.R. 4(A). Because McDonald-Glasco's petition was untimely, he must demonstrate one of the available statutory exceptions for the trial court to have jurisdiction over the petition.

{¶ 14} McDonald-Glasco contends that he was unavoidably prevented from discovering the facts necessary for the claim for relief, under R.C. 2953.23(A)(1), based on alleged *Brady* violation and ineffective assistance of counsel. Specifically, McDonald-Glasco alleges that he was unavoidably prevented from discovering the facts necessary for the claim for relief as the state failed to disclose that the police had seized his cellphone. As set forth previously, under R.C. 2953.23(A)(1)(a), McDonald-Glasco " 'may make the required showing either by establishing a violation under *Brady* . . . or by demonstrating that he was previously unaware of the evidence on which the petition relies and could not have discovered it by exercising reasonable diligence.' " *State v. Berk*, 2024-Ohio-1218, ¶ 9 (10th Dist.), quoting *State v. Johnson*, 2024-Ohio-134, ¶ 18. "A petitioner is 'unavoidably prevented' from the discovery of facts only if he had 'no knowledge of the existence of those facts and could not have learned of their existence within the time specified for filing his petition in the exercise of reasonable diligence.' " *State v. Newlon*, 2025-Ohio-2462, ¶ 12 (5th Dist.), quoting *State v. Holnapy*, 2013-Ohio-4307, ¶ 32 (11th Dist.); *see also State v. Black*, 2022-Ohio-3119, ¶ 11 (10th Dist.) (finding that "the exception provided in R.C. 2953.23(A)(1)(a) involves newly discovered evidence").

{¶ 15} McDonald-Glasco's *Brady* claim, however, is directly undercut by his second ground for relief, which alleged that his trial counsel was ineffective for failing to investigate the contents of the cellphone. McDonald-Glasco acknowledges that "[d]*espite knowing the phone was in police custody*, trial counsel never sought digital analysis or presented evidence from it." (Emphasis added.) (Apr. 21, 2025 Petition.) This court has previously stated that "[a] *Brady* violation involves the post-trial discovery of information that was known to the prosecution, but unknown to the defense." *State v. Dodson*, 2023-Ohio-701, ¶ 28 (10th Dist.), citing *United States v. Agurs*, 427 U.S. 97, 103 (1976); *State v. Wickline*, 50 Ohio St.3d 114, 116 (1990); *see also State v. Wilson*, 2023-Ohio-4771, ¶ 52 (10th Dist.)

("there can be no *Brady* violation where the defendant was aware of the evidence allegedly withheld"). (Further citation omitted.) Based on McDonald-Glasco's own admission, the defense knew that the cellphone was in law enforcement's possession. Thus, McDonald-Glasco cannot demonstrate that he was unavoidably prevented from discovering the facts necessary for the claim for relief.

{¶ 16} Regardless, McDonald-Glasco has also failed to demonstrate that, but for constitutional errors—the *Brady* violation and ineffective assistance of counsel—at trial, no reasonable finder of fact would have found him guilty. R.C. 2953.23(A)(1)(b). As an initial matter, McDonald-Glasco fails to allege any specific location information in the cellphone only that it is "potentially exculpatory digital data." (Apr. 21, 2025 Petition at 3.) *See Dodson* at ¶ 30, quoting *State v. Moore*, 2013-Ohio-3365, ¶ 43 (10th Dist.) (" '[a] *Brady* violation may not rest upon a claim that is 'purely speculative' "). (Further citation omitted.) In any case, we are not persuaded that, had trial counsel introduced evidence from the cellphone, such digital evidence would have convinced a reasonable finder of fact that he was not guilty. The evidence at trial that demonstrated McDonald-Glasco's involvement in the death of D.H. was substantial and corroborated through both eyewitness testimony and surveillance video. As set forth previously, the state presented evidence that McDonald-Glasco helped orchestrate D.H. to be in the alley at the time of the offense. *See McDonald-Glasco* at ¶ 24 ("Slaughter testified in detail about McDonald-Glasco's participation in arranging for [D.H.] to be present in the alley under the guise of selling marijuana so that the group could fight him."). Additional witness testimony placed McDonald-Glasco at the scene of the crime. *See Id.* at ¶ 8 ("At that point, Slaughter said he saw Green and Crowley walk up to [D.H.] while McDonald-Glasco waited in the other alley in view of the others."); *Id.* at ¶ 11 ("Michael testified McDonald-Glasco was present when Green shot [D.H.]."); *Id.* at ¶ 14 ("Flowers said she asked McDonald-Glasco what he had just done. Flowers testified McDonald-Glasco responded, 'I don't know. I got to get up out of here.' "); *Id.* at ¶ 16 ("The next day, Flowers said McDonald-Glasco rode by her house in a gold or bronze vehicle, rolled down the window, pointed a gun at her, and told her that if she kept talking, she would be next."). Moreover, video surveillance footage confirmed McDonald-Glasco's location at the time of the offense. *Id.* at ¶ 9 ("Additional surveillance footage showed McDonald-Glasco walking out of the alley after the shooting."); *Id.* at ¶ 14

("The home security video showed Taneja and McDonald-Glasco leaving the alley."); *Id.* at ¶ 15 ("Within 15 minutes of the shooting, Flowers said her sister identified McDonald-Glasco on the video."). Based on the multiple witnesses and surveillance footage that placed McDonald-Glasco at the scene, we are unconvinced that, but for the alleged constitutional errors at trial, no reasonable finder of fact would have found him guilty based on the cellphone information.

{¶ 17} Finally, we find McDonald-Glasco's equitable tolling argument without merit. "The doctrine of equitable tolling extends statutory deadlines for parties who, through no fault of their own or lack of diligence, were prevented from complying with those deadlines." *Robol v. Columbus*, 2025-Ohio-973, ¶ 18 (10th Dist.), citing *Strother v. Columbus*, 2022-Ohio-4097, ¶ 29 (10th Dist.), citing *In re Regency Village Certificate of Need Application*, 2011-Ohio-5059, ¶ 36 (10th Dist.). To demonstrate equitable tolling, a litigant must show "(1) he has diligently pursued his rights, and (2) an extraordinary circumstance stood in his way and prevented him from timely filing." *Robol* at ¶ 18, citing *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, ¶ 8 (10th Dist.), citing *Regency Village Certificate of Need Application* at ¶ 37. To be sure, courts apply equitable tolling only in exceptional circumstances. *Id.* For the reasons set forth previously, McDonald-Glasco has not demonstrated either that he diligently pursued his rights or that an extraordinary circumstance precluded him from timely filing his petition.

{¶ 18} Because McDonald-Glasco's petition for postconviction relief was untimely, and no statutory exceptions are applicable, we find the trial court lacked jurisdiction to consider the petition for postconviction relief. *Morris* at ¶ 11, citing *State v. Ruark*, 2015-Ohio-3206, ¶ 14 (10th Dist.). As the trial court lacked jurisdiction to consider the petition, it was not required to hold an evidentiary hearing. *Id.*

{¶ 19} For these reasons, we overrule McDonald-Glasco's seven assignments of error.

## V. Conclusion

{¶ 20} Having overruled McDonald-Glasco's seven assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

_____